## BURNETT v CITY OF ADRIAN

Docket No. 63981. Argued October 13, 1981 (Calendar No. 1).—Decided November 23, 1982.

Gloe-Etta Burnett, as administratrix of the estate of Christopher
S. Burnett and for herself, and Bradford Burnett brought an
action against the City of Adrian and other defendants for the
wrongful death of Christopher Burnett, who drowned in Lake
Adrian, an artificial lake used by the city as a reservoir for its
water supply. The lake was created by flooding the area in
1941. Christopher Burnett, who was 14 years old and could not
swim, waded out into the lake and stepped off the edge of a
submerged structure 50 feet from shore. He was swept down to
his death by an undertow around the structure. The plaintiffs
alleged that the city knew that the structure was under the
water and knew that the structure created a danger for persons
who might swim there, but that the city failed to avert the
danger by destroying the structure or posting warnings. The
Lenawee Circuit Court, Kenneth B. Glaser, Jr., J., granted
summary judgment for the defendant city on the ground that
the plaintiffs had failed to state a cause of action under the
recreational use statute, which limits the liability of a land-
owner for injuries to a person using the land for recreational
purposes to those injuries caused by the "gross negligence or
wilful and wanton misconduct" of the landowner. The Court of
Appeals, M. F. Cavanagh, P.J., and R. M. Maher and Van
Valkenburg, JJ., affirmed in an unpublished opinion per cu-
riam (Docket No. 78-1692). The plaintiffs appeal.

In an opinion by Justice Ryan, joined by Chief Justice Fitz-
gerald and Justices Kavanagh and Coleman, the Supreme
Court *held:*

The recreational use statute authorizes recovery in the cir-

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 61A Am Jur 2d, Pleading § 110.
[2-7] 57 Am Jur 2d, Negligence § 101 *et seq.*
  62 Am Jur 2d, Premises Liability §§ 37, 75.
[5] 57 Am Jur 2d, Negligence § 151 *et seq.*
[6] 73 Am Jur 2d, Summary Judgment §§ 6, 26.
[7] 57 Am Jur 2d, Negligence §§ 108, 124.
  62 Am Jur 2d, Premises Liability §§ 153, 154.

cumstances of this case only if gross negligence or wilful and wanton misconduct is shown. No actionable claim for gross negligence is made out because there is no allegation of the defendant's subsequent negligence. The plaintiffs alleged facts sufficient to state a claim of wilful and wanton misconduct under the recreational use statute. The count in attractive nuisance, to the extent that it is grounded in ordinary negligence, is barred by the express terms of the recreational use statute, and to the extent that it pleads wilful and wanton misconduct, is duplicative.

1. This appeal, because of its interlocutory nature, is not an appropriate opportunity to attempt to reconcile the confused and disparate case law concerning gross negligence and wilful and wanton misconduct. The occasion for that effort will be a case upon an adequate factual record.

2. Until then, the Court should be bound by its last best effort to define gross negligence and wilful and wanton misconduct. The leading case is well-reasoned, but its three-element formula for determining wilful and wanton misconduct is poorly stated, being cast in language of ordinary negligence until, in the third element, it is said that it must be shown that an injury is "likely". In that notion, that in the circumstances the injury is probable, or to be expected, or likely, is found the requisite indifference to harm tantamount to a willingness that it occur, that distinguishes wilful and wanton misconduct from ordinary negligence.

3. Under the case law, wilful and wanton misconduct is shown where there is an intent to harm or, in circumstances in which injury is probable, there is such indifference to whether harm will result as to be equivalent to a willingness that harm result, and the plaintiffs have pleaded facts essentially equivalent to a willingness that harm result.

Justice Moody, joined by Justices Williams and Levin, concurring, wrote that the plaintiffs alleged sufficient facts to state a claim of wilful and wanton misconduct under the recreational use statute. The count for gross negligence does not allege subsequent negligence of the defendant, and therefore summary judgment on that count was proper. The claim of attractive nuisance, to the extent that the facts alleged are grounded on the city's negligent conduct, is barred by the express terms of the recreational use statute, and to the extent that it sets forth facts sufficient to support an allegation of wilful and wanton misconduct, is duplicative.

1. In the context of the recreational use statute, a plaintiff, to

state a claim of wilful and wanton misconduct upon which relief can be granted, must allege: a) the defendant's knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another; b) his ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand; and c) the omission of the use of such care and diligence to avert the threatened danger when, to the ordinary mind, it must be apparent that the result is likely to prove disastrous to another.

2. Under the recreational use statute, a claim of wilful and wanton misconduct does not require an allegation of an affirmatively reckless act to survive a motion for summary judgment. In so requiring, the Court of Appeals relied on dicta in cases involving the common-law last clear chance doctrine and criticism of the three-part wilful and wanton misconduct test in circumstances which did not involve the recreational use statute. The test describes a degree of culpability which is higher than "mere" negligence; the requirement that the defendant recognize that failure to exercise ordinary care would have dire consequences describes the reckless behavior which distinguishes wilful and wanton misconduct from negligence. To require an affirmatively reckless act not only conflicts with precedent, but also introduces a new area of confusion in the law. A failure to act in the face of a duty may be just as reckless, wanton, and wilful as an affirmative act. In most cases, the court could find an affirmative act by viewing the facts from a different angle. For example, in this case the defendant's misconduct could be seen as its failure to destroy the structure or failure to warn swimmers of the danger, or the misconduct could be seen as the affirmative act of flooding the land without removing the structure. The difference in approach should not determine the defendant's liability. Use of the three-part test of wilful and wanton misconduct furthers the policy of the recreational use statute by adequately protecting landowners from liability for ordinary negligence, thereby encouraging them to keep their lands open for recreational use, but does not preclude recovery for injury caused by conduct which reflects a greater degree of culpability. The test strikes the proper balance, and defines the threshold burden a plaintiff must satisfy to state a cause of action under the recreational use statute.

3. Gross negligence should not be treated as being without an independent meaning in the recreational use statute. At a minimum, gross negligence under the statute, as at common

law, incorporates the doctrine of last clear chance. Because the complaint does not allege the subsequent negligence of the defendant, the summary judgment on the count for gross negligence was proper.

4. Applying the three elements of the test to the facts of this case, the plaintiffs have alleged sufficient facts to withstand the defendant's motion for summary judgment. Their allegations support a finding that the city knew of the submerged structure because the structure appears on maps which were made before the flooding and it is now visible when the water level is low. From the existence of tire tracks to the water, a nearby parking area, and a footpath to the water, the defendant city knew or should have known that swimmers used the lake and were exposed to the danger created by the submerged structure. The plaintiffs allege that the defendant had the ability to avoid the harm by ordinary care and diligence in the use of the means at hand, either by removing the submerged structure or by posting a warning of its existence. Finally, they allege that the submerged structure allowed the decedent, who could not swim, to go much farther out into the lake than he otherwise could have gone to the point where he suddenly encountered deep water with an unnatural current around the structure and drowned. Whether it is apparent that the alleged omissions in this case would likely prove disastrous to another person is an issue for the jury to determine. Many of the plaintiffs' other contentions also involve issues of fact and conclusions upon which reasonable minds can differ. The plaintiffs should be allowed to present evidence to the jury in support of their allegations.

5. The recreational use statute clearly requires that, to determine liability, a court must look to the nature and blameworthiness of a defendant's conduct. To the extent that the facts alleged in the plaintiffs' attractive nuisance claim are grounded in the defendant's negligent conduct, the claim is barred by the express terms of the statute. To the extent that the complaint sets forth facts sufficient to support an allegation of wilful and wanton misconduct, it is duplicative of the cause of action based solely on that conduct.

Reversed and remanded.

## OPINION OF THE COURT

1. NEGLIGENCE — GROSS NEGLIGENCE — SUBSEQUENT NEGLIGENCE — PLEADING.

A claim for gross negligence is not made out by a pleading in

which there is no allegation of the defendant's subsequent negligence.

2. NEGLIGENCE — RECREATIONAL USE — WILFUL AND WANTON MIS-
   CONDUCT.

   Allegations that the owner of a lake knew of a submerged structure which created a danger for swimmers and that the owner failed to destroy the structure or post warnings were sufficient to state a claim of wilful and wanton misconduct under the recreational use statute (MCL 300.201; MSA 13.1485).

3. NEGLIGENCE — WILFUL AND WANTON MISCONDUCT.

   Wilful and wanton misconduct is distinguished from ordinary negligence by an intent to harm or by an indifference of a defendant in the presence of the probability of harm which is tantamount to a willingness that the harm occur.

   CONCURRING OPINION BY BLAIR MOODY, JR., J.

4. NEGLIGENCE — RECREATIONAL USE — WILFUL AND WANTON MIS-
   CONDUCT.

   *The elements of wilful and wanton misconduct, under the statute which limits the liability of a landowner for injuries to a person using the defendant's land for recreational purposes, are 1) knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another, 2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand, and 3) the omission to use such care and diligence to avert the threatened danger when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another (MCL 300.201; MSA 13.1485).*

5. NEGLIGENCE — RECREATIONAL USE — STATUTES — WILFUL AND
   WANTON MISCONDUCT — PUBLIC POLICY.

   *The policy of the statute which limits the liability of a landowner for injuries to a person using the land for recreational purposes is to protect landowners from liability for ordinary negligence, thereby encouraging them to keep their lands open for recreational use, without precluding recovery for an injury caused by conduct which reflects a greater degree of culpability than ordinary negligence (MCL 300.201; MSA 13.1485).*

6. NEGLIGENCE — RECREATIONAL USE — SUMMARY JUDGMENT.

   *Plaintiffs sufficiently stated a cause of action in wilful and wan-*

*ton misconduct for injuries to a person using the defendant's land for recreational purposes where the plaintiffs alleged that a 14-year-old boy drowned by stepping off a submerged structure into a drop-off 50 feet from the shore of an artificial lake flooded by the defendant city for use as a reservoir for its water supply, the submerged structure appears on maps made before the land was flooded and is now visible when the water level is low, from the existence of tire tracks to the water, a nearby parking area, and a footpath to the water, the city knew or should have known that swimmers used the lake and were exposed to the danger created by the submerged structure, the defendant had the ability to avoid the harm by removing the structure or by posting a warning of its existence, and the structure allowed the decedent, who could not swim, to wade much farther into the lake than he otherwise could have waded to where he suddenly encountered deep water with an undertow and drowned (MCL 300.201; MSA 13.1485).*

7. NEGLIGENCE — RECREATIONAL USE — ATTRACTIVE NUISANCE.

*The express provisions of the recreational use statute bar claims alleging common-law attractive nuisance grounded in a landowner defendant's ordinary negligence; the plaintiff must allege that the injuries received by the person using the land for recreational purposes were caused by the defendant's gross negligence or wilful and wanton misconduct (MCL 300.201; MSA 13.1485).*

*Marston, Sachs, Nunn, Kates, Kadushin & O'Hare, P.C.* (by *Kathleen L. Bogas),* for plaintiffs.

*Foster, Swift, Collins & Coey, P.C.* (by *John L. Collins, James D. Adkins,* and *Michael J. Schmedlen),* for defendant.

RYAN, J. This is an appeal from a Court of Appeals affirmance of a summary judgment dismissing the plaintiffs' case for failure to state an actionable claim under the so-called recreational use statute, MCL 300.201; MSA 13.1485. The only question before us is whether the plaintiffs have alleged facts sufficient to state a claim for gross

negligence or willful and wanton misconduct.[1] Our task is thus limited because the recreational use law authorizes recovery in the circumstances of this case only if gross negligence or willful and wanton misconduct is shown.

We agree that no actionable claim for gross negligence is made out in the plaintiffs' pleadings because there is no allegation therein of the defendant's subsequent negligence. See *Gibbard v Cursan,* 225 Mich 311; 196 NW 398 (1923).

We also agree that the plaintiff has alleged facts sufficient, if barely so, to make out a case for willful and wanton misconduct as that concept is defined in *Gibbard, supra.*

This separate opinion is written, however, because we do not subscribe to much of the analysis in our brother's opinion, particularly his assessment of the cases of *Thone v Nicholson,* 84 Mich App 538; 269 NW2d 665 (1978), and *Thomas v Consumers Power Co,* 394 Mich 459; 231 NW2d 653 (1975).

The interlocutory posture of this litigation suggests that this appeal is an inappropriate opportunity to attempt to reconcile the confused and disparate pronouncements of Michigan's appellate judiciary concerning the concepts of gross negligence and willful and wanton misconduct. To accomplish that desirable task, it is necessary, we think, to disown much of what has been written in this Court and in the Court of Appeals in earlier cases, and to enunciate a simple and easily understood test defining both gross negligence and willful and wanton misconduct. The more appropriate occasion for that effort will be the time when a

---

[1] The nuisance issue raised by the appellant, and addressed in part IV of our brother's opinion, is but an aspect of this issue. We concur in his resolution of it.

case is before us upon a factual record adequate to enable those who will read our pronouncement to better understand it because of the illuminating reflection of the factual and legal context in which it is said. That cannot and ought not to be done on an appeal from the grant of a motion for summary judgment for failure to plead an actionable claim under GCR 1963, 117.2(1).

Until such record is made and presented, we should be guided, indeed bound, as the lawyers before us are, by this Court's last best effort to define gross negligence and willful and wanton misconduct. That effort was last accomplished best, even if not in the context of the recreational use act, in *Gibbard, supra. Gibbard* is a well-reasoned case whose three-element formula for determining willful and wanton misconduct, however, is poorly stated.[2] If the three-prong test is read in the context of the instructive analysis which precedes it in *Gibbard,* it becomes evident that the rule of the case is that willful and wanton misconduct is made out only if the conduct alleged shows an intent to harm or, if not that, such indifference to whether harm will result as to be the equivalent of a willingness that it does. Willful and wanton misconduct is not, as the *Gibbard* Court observed, a high degree of carelessness. The poorly phrased

[2] The three-element formula which Justice CLARK adopted to summarize his analysis of the difference between a high degree of negligence and willful and wanton misconduct was taken, with attribution of course, from a legal encyclopedia:

"According to note, 69 LRA 516, and text, 20 RCL, p 145, the elements necessary to characterize the injury in the case at bar as wilfully inflicted are:

" '(1) Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another; (2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand; (3) the omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another.' " *Gibbard v Cursan,* 225 Mich 322.

three-prong test for willful and wanton misconduct in *Gibbard* is cast entirely in language of ordinary negligence until, in the third element, it is said that it must be shown that an injury "is likely". It is in that concept—the notion that in the circumstances of a given case the injury is probable, or to be expected, or likely—that is found the requisite indifference to harm tantamount to a willingness that it occur, if not a specific intent that it does, which distinguishes willful and wanton misconduct from ordinary negligence.

Upon careful examination of the allegations of the plaintiffs' fourth amended complaint, conceding the truth of all the well-pleaded allegations and resolving all inferences properly to be drawn therefrom in plaintiffs' favor, we are satisfied that, on the whole, the plaintiff has alleged, if barely, facts essentially equivalent to an assertion that the City of Adrian, in its acts and omissions, was indifferent to the likelihood that catastrophe would come to a member of the public using the lake, an indifference essentially equivalent to a willingness that it occur.

We do not find the language of the three-prong test of *Gibbard* a satisfactory expression of the standard to be used for identifying willful and wanton misconduct, and do not think it is a faithful summarization of the analysis which it is intended to encapsulate. We would describe the test differently, but only upon a fully developed factual record.

FITZGERALD, C.J., and KAVANAGH and COLEMAN, JJ., concurred with RYAN, J.

BLAIR MOODY, JR., J. *(concurring).* Plaintiffs brought this action to recover damages from the City of Adrian for the drowning of 14-year-old

Christopher Shawn Burnett in Lake Adrian. The trial court granted defendant's motion for summary judgment for failure to state a cause of action. GCR 1963, 117.2(1). The Court of Appeals affirmed.

We reverse in part. Plaintiffs have alleged sufficient facts to state the claim of "gross negligence or wilful and wanton misconduct" required to maintain an action under MCL 300.201; MSA 13.1485, the recreational use act. We reaffirm that a threshold test to withstand a motion for summary judgment under this statute is based on the common-law elements of wilful and wanton misconduct as first set forth by this Court in *Gibbard v Cursan*, 225 Mich 311; 196 NW 398 (1923).

However, we find that the trial court's grant of summary judgment with respect to plaintiffs' other claims for relief was proper. The recreational use statute, which governs this case, bars an action based solely upon attractive nuisance.

I

A motion for summary judgment based on GCR 1963, 117.2(1) tests the legal sufficiency of the pleadings, viewing the facts alleged in the light most favorable to the non-moving party. Therefore, in examining the pleadings in the instant case, this Court must accept as true plaintiffs' well-pleaded facts[1] and any reasonable inferences that can be drawn therefrom. *Bielski v Wolverine Ins Co,* 379 Mich 280; 150 NW2d 788 (1967). Summary judgment will be affirmed only if this review indicates that plaintiffs' claim is "so clearly unenforceable as a matter of law that no factual develop-

---

[1] Well-pleaded facts include "such specific averments as are necessary reasonably to inform the adverse party of the nature of the cause he is called upon to defend." GCR 1963, 111.1(1).

ment can possibly justify a right to recovery". *Crowther v Ross Chemical & Mfg Co,* 42 Mich App 426, 431; 202 NW2d 577 (1972). Where reasonable minds can differ in resolving an issue, however, summary judgment is improper, and the question must be submitted to the jury. *Kieft v Barr,* 391 Mich 77; 214 NW2d 838 (1974).

## II

Lake Adrian is an artificial body of water created by defendant City of Adrian for use as a reservoir for its water treatment facilities. Defendant acquired the flooding rights to the land underneath the lake in 1941 and shortly thereafter contracted with a land surveyor to dam and flood the area.

According to plaintiffs' fourth amended complaint, young Christopher Burnett, a non-swimmer,[2] drowned after walking off the edge of a submerged structure that defendant failed to destroy or level at the time of flooding. Plaintiffs claim that the continued existence of this structure created an unnatural current, "a sudden drop-off and downpull". This undertow swept decedent downward to his death as he unknowingly stepped off the building some 50 feet from shore. Deputy sheriffs recovered Christopher's body from a corner of the structure approximately two hours after he disappeared into the lake.

Plaintiffs allege further that the city knew that the structure existed from maps at the time of flooding and from the fact that the structure is

---

[2] Defendant's attorney conceded during oral argument that the fact that plaintiffs' decedent could not swim "isn't that relevant" to the question this Court must decide, *i.e.,* whether plaintiffs' claims are sufficient to survive a motion for summary judgment.

visible when the water level is low; that the city knew or had reason to know of the potential harm created for swimmers, including children, who used the area; and that it failed to avert the danger by destroying the structure, fencing the lake, or posting warnings.

The trial judge ruled that decedent's non-paying use of the lake for swimming brought his activities under the recreational use statute. This statute provides:

"No cause of action shall arise for injuries to any person who is on the lands of another without paying to such other person a valuable consideration for the purpose of fishing, hunting, trapping, camping, hiking, sightseeing, motorcycling, snowmobiling, or any other outdoor recreational use, with or without permission, against the owner, tenant, or lessee of said premises unless the injuries were caused by the gross negligence or wilful and wanton misconduct of the owner, tenant, or lessee." MCL 300.201; MSA 13.1485.

Thus, to recover, plaintiffs are required to prove that defendant was guilty of "gross negligence or wilful and wanton misconduct". The trial court held that plaintiffs failed to allege sufficient facts to charge defendant with this higher standard of culpability and granted the city's motion for summary judgment on the gross negligence and wilful and wanton misconduct counts. The court also held that the recreational use statute barred any claim of attractive nuisance based on ordinary negligence.[3]

---

[3] The trial court also denied defendant's motion for summary judgment based on governmental immunity, holding that the operation of a water works system is an unprotected proprietary function rather than an immune governmental activity. Defendant city did not appeal this ruling. Therefore, the issue is not presented to this Court in the instant case.

In an unpublished opinion, the Court of Appeals held that a claim of gross negligence requires an allegation of subsequent negligence on the part of a defendant and that a cause of action for wilful and wanton misconduct must be supported by an allegation of "an affirmatively reckless act beyond, or entirely different from * * * negligence". According to the Court, plaintiffs had failed to plead facts sufficient to sustain either allegation. The Court also affirmed the trial court's grant of summary judgment for defendant on the attractive nuisance claim.

## III

The concepts of gross negligence and wilful and wanton misconduct constitute one of the more elusive aspects of the law. Not only are the doctrines nebulous by their very nature, but their history and application are marked by a pattern of apparent confusion.

The principal sources[4] for interpretation of gross negligence and wilful and wanton misconduct are the common law and cases construing statutes which incorporate these terms, most notably the now-defunct guest passenger statute, MCL 257.401; MSA 9.2101,[5] and the recreational use act, at issue in this case.

---

[4] The concepts of gross negligence and wilful and wanton misconduct are also used to define culpability in the criminal law. See *People v Orr*, 243 Mich 300; 220 NW 777 (1928). See also CJI 16:4:05. Necessarily, since a person's liberty is at stake, the threshold requirement for proof of wilful and wanton misconduct will be greater in criminal cases than in civil cases.

[5] The guest passenger act was declared unconstitutional, as violative of equal protection, in *Manistee Bank & Trust Co v McGowan*, 394 Mich 655; 232 NW2d 636 (1975).

A

The common-law definitions of gross negligence
and wilful and wanton misconduct were set forth
by this Court more than 50 years ago in *Gibbard v
Cursan, supra.* The doctrine of gross negligence,
developed to mitigate the harsh effects of the rule
of contributory negligence extant at the time of
*Gibbard,* allowed a negligent plaintiff to recover
for his injuries in certain circumstances. Specifi-
cally because "[t]he rule of comparative negligence
does not obtain in this State",[6] 225 Mich 320, the
*Gibbard* Court rejected the argument that gross
negligence refers to degrees of negligence, holding
that the concept cannot mean *greater* negligence,
but must be confined to *subsequent* negligence:

"When will gross negligence of a defendant excuse
contributory negligence of a plaintiff? In a case where
the defendant, who knows, or ought, by the exercise of
ordinary care, to know, of the *precedent negligence* of
the plaintiff, by his *subsequent negligence* does plaintiff
an injury. Strictly, this is the basis of recovery in all
cases of gross negligence." 225 Mich 319. (Emphasis in
original.)[7]

In today's jurisprudence, this notion of subsequent,
or gross, negligence has been essentially restated

[6] Of course, this Court's decision in *Placek v Sterling Heights,* 405
Mich 638; 275 NW2d 511 (1979), which abrogated the doctrine of
contributory negligence and introduced comparative negligence into
Michigan tort law, renders this statement inaccurate today.

[7] The Court went on to list a number of synonyms for the term:

"Such gross negligence is also sometimes called discovered negli-
gence, subsequent negligence, wanton or wilful or reckless negligence,
discovered peril, last clear chance doctrine, and the humanitarian
rule." 225 Mich 319.

As the Court of Appeals so aptly stated in a subsequent case:

"A legal term with this number of aliases, each of which is given a
precise meaning by case law and legal definition was destined for
confusion." *Papajesk v Chesapeake & O R Co,* 14 Mich App 550, 555;
166 NW2d 46 (1968).

in the form of the last clear chance doctrine. See *Zeni v Anderson,* 397 Mich 117; 243 NW2d 270 (1976).[8]

In defining wilful and wanton misconduct, the *Gibbard* Court described behavior qualitatively different from and more blameworthy than ordinary, or even gross, negligence:

"If one wilfully injures another, or if his conduct in doing the injury is so wanton or reckless that it amounts to the same thing, he is guilty of more than negligence. The act is characterized by wilfulness, rather than by inadvertence, it transcends negligence— is different in kind.[9]

---

[8] In *Zeni,* 152-153, this Court adopted two sections of the Restatement of Torts, 2d, to define the last clear chance doctrine:

" '§ 479. Last Clear Chance: Helpless Plaintiff

" 'A plaintiff who has negligently subjected himself to a risk of harm from the defendant's subsequent negligence may recover for harm caused thereby if, immediately preceding the harm,

" '(a) the plaintiff is unable to avoid it by the exercise of reasonable vigilance and care, and

" '(b) the defendant is negligent in failing to utilize with reasonable care and competence his then existing opportunity to avoid the harm, when he

" '(i) knows of the plaintiff's situation and realizes or has reason to realize the peril involved in it or

" '(ii) would discover the situation and thus have reason to realize the peril, if he were to exercise the vigilance which it is then his duty to the plaintiff to exercise.' Restatement Torts, 2d, § 479, p 530."

" '§ 480. Last Clear Chance: Inattentive Plaintiff

" 'A plaintiff who, by the exercise of reasonable vigilance, could discover the danger created by the defendant's negligence in time to avoid the harm to him, can recover it, but only if, the defendant

" '(a) knows of the plaintiff's situation, and

" '(b) realizes * * * that the plaintiff is inattentive and therefore unlikely to discover his peril in time to avoid the harm, and

" '(c) thereafter is negligent in failing to utilize with reasonable care and competence his then existing opportunity to avoid the harm.' Restatement Torts, 2d, § 480, p 535."

[9] Because of this qualitative difference in behavior, a plaintiff's contributory negligence does not bar recovery when the defendant's conduct is wilful or wanton:

"Where recovery is sought on the theory that the injury was caused by wilful, wanton or reckless misconduct of a defendant, as distinguished from negligence, there is no more reason for permitting the

* * *

" 'One who is properly charged with recklessness or wantonness is not simply more careless than one who is only guilty of negligence. His conduct must be such as to put him in the class with the wilful doer of wrong. The only respect in which his attitude is less blameworthy than that of the intentional wrongdoer is that, instead of affirmatively wishing to injure another, he is merely willing to do so. The difference is that between him who casts a missile intending that it shall strike another and him who casts it where he has reason to believe it will strike another, being indifferent whether it does so or not.' " Quoting *Atchison T & S F R Co v Baker,* 79 Kan 183, 189-190; 98 P 804, 807 (1908); 225 Mich 320-321.

The Court then listed the three elements necessary to prove that a defendant is guilty of such wilful or wanton behavior:

" '(1) Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another; (2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand; (3) the omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another.' " 225 Mich 322.

While, in theory, gross negligence and wilful and wanton misconduct are distinct concepts with different legal bases, in practice there has been much confusion and unfortunate overlap between the two doctrines. Part of the difficulty stems from the fact that the labels are sometimes used inter-

---

defense of contributory negligence than in a case of assault and battery." 225 Mich 320-321.

Further, proof of such misconduct excuses the plaintiff's *concurrent* negligence, which generally constitutes a bar when gross, or subsequent, negligence is alleged.

changeably, with "gross negligence" defined in "wilful and wanton misconduct" terms. See, *e.g., Schindler v Milwaukee, L S & W R Co,* 87 Mich 400, 411; 49 NW 670 (1891).

More importantly, the last clear chance doctrine is based on two fundamentally different theories which courts generally fail to distinguish. The more common explanation for excusing a plaintiff's contributory negligence is that such negligence is not a proximate cause of the harm, because defendant's subsequent negligence constitutes a superseding cause. *Papajesk v Chesapeake & O R Co,* 14 Mich App 550; 166 NW2d 46 (1968). The other rationale underlying the doctrine of last clear chance is based on the assumption that a defendant who does not act to avoid harm even after he has discovered that a plaintiff is in danger is guilty of more than negligence; his conduct may be characterized as reckless, wilful, or even intentional. Thus, last clear chance liability may be based on either of two qualitatively different types of behavior, negligence, or wilfulness. Hamill, *The Last Clear Chance Doctrine in Michigan,* 7 Mich State Bar J 270 (1928); 2 Restatement Torts, 2d, Comment, § 479, pp 530-531. The lack of clarity as to which theory is used in a particular last clear chance case contributes substantially to the confusion between the theoretically distinct concepts of gross negligence and wilful and wanton misconduct.

## B

Analysis of the same two terms in the guest passenger exception to the civil liability act, which excluded ordinary negligence as a basis for liability,[10] produced a somewhat different pattern. Even

---

[10] The guest passenger act provided, in partinent part:

though the language of the statute was disjunctive, requiring proof of the car owner's "gross negligence *or* wilful and wanton misconduct", most interpretations[11] treated the doctrines as synonymous and equivalent to common-law wilful and wanton misconduct as defined by the three-part *Gibbard* test.[12] See, *e.g., Thayer v Thayer,* 286 Mich 273; 282 NW 145 (1938).

The merger of the two concepts can be traced to this Court's assessment that gross negligence has no independent meaning in the guest passenger context. Cases reflecting antecedent negligence of the guest superseded by the subsequent negligence of the driver virtually never arise. *Finkler v Zimmer,* 258 Mich 336; 241 NW 851 (1932); *Riley v*

"[N]o person, transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been caused by the *gross negligence* or *wilful and wanton misconduct* of the owner or operator of such motor vehicle and unless such *gross negligence* or *wilful and wanton misconduct* contributed to the injury, death or loss for which the action is brought." MCL 257.401; MSA 9.2101. (Emphasis added.)

[11] In some cases, however, the Court specifically held that the common-law definitions applied to the statutory terms, defining gross negligence as subsequent negligence and using the three-pronged test for wilful and wanton misconduct. *Willett v Smith,* 260 Mich 101; 244 NW 246 (1932); *Boyle v Moseley,* 258 Mich 347; 241 NW 849 (1932); *Finkler v Zimmer,* 258 Mich 336; 241 NW 851 (1932). Further, as in the common-law context, some disagreement existed as to whether gross negligence was limited to subsequent negligence. See *Finkler,* 342 (Justice FEAD, *concurring).* Conversely, this Court has also noted that the guest passenger definitions do not control common-law interpretations:

"While the guest passenger cases may be helpful, * * * we do not regard them as controlling in determining the correct concepts of gross negligence and wilful and wanton misconduct at common law." *LaCroix v Grand Trunk W R Co,* 379 Mich 417, 426; 152 NW2d 656 (1967).

[12] This Court used the terms interchangeably to describe the three-part test. See, *e.g., Kieft v Barr,* 391 Mich 77; 214 NW2d 838 (1974) (three-part test labelled "gross negligence"), and *Tien v Barkel,* 351 Mich 276; 88 NW2d 552 (1958) (three-part test used to define wilful and wanton misconduct).

*Walters,* 277 Mich 620; 270 NW 160 (1936) (opinion of Justice POTTER). Thus, in guest passenger situations, liability was imposed when a defendant's conduct, "usually made up of the sum total of * * * factors, manifests a high degree of danger, a manifest probability that harm will result therefrom, and an utter disregard of the probable consequences". *Stevens v Stevens,* 355 Mich 363, 371; 94 NW2d 858 (1959).

## C

In contrast with common-law and even guest passenger gross negligence and wilful and wanton misconduct, interpretation of the concepts in the context of the recreational use act has been relatively consistent. In nearly every case involving construction of the statute, courts in Michigan have utilized the three-part *Gibbard* test to define a factual threshold that plaintiffs must satisfy to state a cause of action and survive a motion for summary judgment. See, *e.g., Magerowski v Standard Oil Co,* 274 F Supp 246 (WD Mich, 1967); *Taylor v Mathews,* 40 Mich App 74; 198 NW2d 843 (1972); *Lucchesi v Kent County Road Comm,* 109 Mich App 254; 312 NW2d 86 (1981).[13] It is important that precedent be respected and not be overruled unless some substantial reason is given.

Any misconceptions that have arisen regarding this threshold requirement have resulted not be-

[13] In *Heider v Michigan Sugar Co,* 375 Mich 490; 134 NW2d 637 (1965), the statute was initially overlooked and raised only upon appeal to this Court. Apparently because of that omission, the plaintiff's pleadings did not specifically allege gross negligence or wilful and wanton misconduct, and the Court did not define the terms.

In *Anderson v Brown Brothers, Inc,* 65 Mich App 409; 237 NW2d 528 (1975), the Court of Appeals did not verbalize the three-pronged test. However, in affirming the trial court's judgment of no cause of action on the gross negligence and wilful and wanton misconduct counts, the Court of Appeals essentially followed the outlines of the *Gibbard* definition.

cause there has been some variation in the definition or use of the underlying concepts, but rather from an inconsistency in the label attached to those concepts. Thus, in *Magerowski, supra,*[14] the trial judge, citing cases which defined wanton and wilful misconduct, nevertheless used the term "gross negligence" in quoting the three-part formula. In *Taylor, supra,*[15] the Court, referring to some of the cases cited in *Magerowski* and also to *Gibbard,* labeled the test as the definition of "gross negligence or wilful and wanton misconduct". Finally, in *Thomas v Consumers Power Co,* 394 Mich 459; 231 NW2d 653 (1975), this Court, faced with a claim governed by the recreational use act, applied the three elements of wilful and wanton misconduct set forth in *Gibbard,* but termed the cause of action "gross negligence".

*Thomas* represents this Court's most recent pronouncement concerning the sufficiency of a claim of gross negligence or wilful and wanton misconduct under the recreational use statute. The facts in *Thomas* also presented a situation analogous to that in the instant case. Plaintiffs sought recovery for the deaths of their decedents in a nighttime snowmobile accident. The accident occurred when decedents hit a Consumers Power guy wire on land owned by the Saginaw County Agricultural Soci-

---

[14] In *Magerowski,* a wrongful death action to recover for the drowning of a 9-year-old boy who fell from the defendant's dock while attempting to fish, the district court found sufficient evidence to satisfy the three-part test and denied the defendant's motion for summary judgment on the gross negligence issue.

[15] In *Taylor,* the plaintiff's minor son suffered injuries when he dove from a board attached to a tree into shallow water in a gravel pit owned by the defendants and hit his head on the bottom. Reversing the trial court's grant of summary judgment in favor of the defendant, the Court of Appeals held that the question whether, *inter alia,* the defendant's failure to warn or fence the property stated a cause of action for gross negligence or wilful and wanton misconduct under the recreational use statute should be left to the jury.

ety. In reversing the trial court's grant of summary judgment in favor of defendant, this Court stated simply:

"Plaintiffs clearly alleged that the defendants knew of Consumers Power's unmarked guy wires and the threat therefrom to snowmobilers permissively using the Saginaw County Agricultural Society's land, that unmarked guy wires in areas 'exposed to traffic' were a violation of an industry safety code, that the defendants could have avoided the resulting harm in several ways, and that they failed to do so." (Citations omitted.) *Thomas*, 460-461.

The trial court in the instant case attempted to distinguish *Thomas* on its facts, noting initially that *Thomas* involved a regular snowmobile area as opposed to the "old swimming hole type of place" presented here. However, under the three-part threshold test, the degree of use is a distinction without a difference, as long as defendants are or have reason to be aware that *some* recreational users are exposed to danger on their property. The trial judge further contrasted the "obvious and gross type of danger" in *Thomas* with the more subtle danger existing in the instant case. While the obviousness of the threat does relate directly to the *Gibbard* element of "[k]nowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another", the fact that the hazard presented by the presence of the structure may have been less apparent than the guy wire in *Thomas* nevertheless does not mean that the City of Adrian did not in fact know of the structure's existence or did not have reason to know of the risk involved.[16] The importance of this

---

[16] From another perspective, the obviousness of the danger may relieve a defendant of liability. An owner or occupier of land has no duty to warn or otherwise protect persons coming upon the land from

knowledge factor also renders inapt the trial court's comparison of the danger posed by the structure to the risks created by currents and dropoffs which occur naturally in lakes. An owner or occupier of a lake may not necessarily be charged with knowledge of natural conditions existing therein. In contrast, however, a party which has created an artificial condition certainly may be charged with knowledge of that condition, and further, depending upon the circumstances, may be held to know of any hazards caused thereby.

The Court of Appeals in the instant case did not refer to *Thomas* for the definition of the threshold requirement to state a claim under the recreational use act. Instead, it relied on *Thone v Nicholson,* 84 Mich App 538; 269 NW2d 665 (1978), the opinion of another Court of Appeals panel which sharply criticized *Thomas.* In *Thone,* plaintiff motorcyclist was injured while riding along an abandoned railroad right-of-way when he hit the bank of a creek which intersected his path. He contended that defendants' failure to warn or otherwise guard motorcyclists against such harm made them liable under the recreational use statute. The Court of Appeals disagreed and affirmed summary judgment for defendant.

According to the *Thone* Court, gross negligence under the recreational use act is equivalent to the last clear chance doctrine. Without an allegation

obvious, as opposed to hidden, defects. See *Beals v Walker,* 98 Mich App 214; 296 NW2d 828 (1980). Thus, because of the subtlety of the danger in the instant case, greater significance could be attached to defendant City of Adrian's alleged failure to protect people from dire consequences. The fact that the danger may be hidden undercuts the ability of persons who enter upon the land to protect themselves; harm may be avoided only if the owner or occupier who has reason to know of its existence acts to avert it.

It should be noted that the plaintiffs in *Thomas* alleged that the guy wire responsible for the decedents' deaths was not visible at night, when the accident occurred.

of subsequent negligence on the part of defendant, the concept is inapplicable.[17]

More importantly, in discussing wilful and wanton misconduct, the *Thone* panel echoed this Court's criticism of the three-part *Gibbard* definition in *Zeni v Anderson, supra.* But *Zeni* did not involve the recreational use statute. Nor did it relate to common-law wilful and wanton misconduct. Rather, in *Zeni* this Court focused on the confused state of the law concerning common-law gross negligence and last clear chance and attempted to clarify the gross negligence concept by adopting the definition of last clear chance contained in the Restatement of Torts, 2d. Only in dictum did the Court refer to wilful and wanton misconduct:

"While *Gibbard* said it distinguished 'wilful, wanton or reckless misconduct' from negligence, it accepted a definition of 'wilful' couched in terms of ordinary negligence, *except for the recognition that failure to exercise ordinary care would have dire consequences."* (Emphasis added.) 397 Mich 150.

From this discussion, the Court of Appeals in *Thone* concluded that, notwithstanding the long

[17] The panel noted the fact that this Court in *Thomas* applied the terms "gross negligence" to the plaintiffs' claim in that case. The *Thone* Court concluded that what the Court really meant in *Thomas* was that a jury could find defendants liable on the basis of wilful and wanton misconduct. The trial judge in the instant case had attempted to reconcile this conflict in terminology by hypothesizing that the Court in *Thomas* intended to interpret gross negligence as synonymous with common-law wilful and wanton misconduct as under the guest passenger statute. However, the reason for the synonymous treatment of the concepts in the guest passenger act, *i.e.,* that fact situations involving subsequent negligence do not arise, is not present in the recreational use act context. Thus, we agree with the above assessment of the *Thone* Court. This Court, in *Thomas,* in effect applied the three-pronged test of common-law wilful and wanton misconduct to hold that the plaintiffs' claim under the recreational use statute was sufficient to withstand summary judgment.

common-law and statutory adherence to the three-pronged formula, an allegation of an "affirmatively reckless act" is necessary to state a cause of action for "wilful and wanton misconduct" under the recreational use statute.[18]

It appears that the *Thone* analysis read too much into *Zeni's* criticism of the *Gibbard* test. Any evaluation of the impact of *Zeni's* comment must be tempered by the fact that it constitutes obiter dictum. *Zeni* focused on the last clear chance doctrine and did not even refer to this Court's use of the three-pronged formula less than one year earlier in *Thomas.* It is highly unlikely that this Court would seriously restrict the use of a long-standing, consistently used test without more detailed analysis in a case which directly presents the issue.

Furthermore, examination of the *Gibbard* test indicates that it does indeed describe a threshold degree of culpability higher than "mere" negligence. In fact, it is the very additional element that *Zeni* acknowledges to be included in the *Gibbard* definition, *i.e.,* "the recognition that failure to exercise ordinary care would have dire consequences", that describes the reckless behav-

---

[18] The origin of this requirement imposed by the *Thone* panel is unclear. The only reference to such terminology in the *Thone* opinion is contained in a quotation from cases interpreting the guest passenger proviso where this Court held that, *inter alia,* a plaintiff must show that the driver exhibited " 'an affirmatively reckless state of mind with intent to depart from careful driving' " to state a cause of action. *Brooks v Haack,* 374 Mich 261, 265; 132 NW2d 13 (1965), quoting *Sorenson v Wegert,* 301 Mich 497, 511; 3 NW2d 857 (1942). See also *Greimel v Fischer,* 305 Mich 45; 8 NW2d 906 (1943). In the context of these guest passenger cases, "an affirmatively reckless state of mind" appears to require a showing that the driver failed to drive carefully, or continued to proceed recklessly, in the face of an apparent or known danger. Further, in *Brooks* the state of mind requirement was discussed in order to emphasize that more than the occurrence of a serious accident is necessary to create guest passenger liability. Viewed in this manner, the requirement adds nothing to the elements already specified in the three-pronged *Gibbard* test.

ior which distinguishes wilful and wanton misconduct from negligence. That this factor of actual or imputed knowledge of serious consequences, incorporated in the *Gibbard* test, also figures prominently in universally accepted descriptions of wilful, wanton, or reckless misconduct, reinforces the conclusion that *Gibbard's* formulation constitutes an appropriate standard for determining the existence of such behavior and also for differentiating such misconduct from negligence.

It should be noted, further, that many of the long-recognized definitions of wilful, wanton, and reckless misconduct are also, in part, "couched in terms of ordinary negligence":

"A failure to exercise *ordinary care* to prevent an injury amounts to a reckless disregard for the safety of others *where an impending danger is known.*" (Emphasis added.) 57 Am Jur 2d, Negligence, § 104, p 455.[19]

"As the probability of injury to another, apparent from the facts within his knowledge, becomes greater, his conduct takes on more of the attributes of intent, until it reaches that substantial certainty of harm which juries, and sometimes courts, may find inseparable from intent itself. Such intermediate mental states, *based upon a recognizable great probability of harm,* may still properly be classed as 'negligence,' but are commonly called 'reckless,' 'wanton,' or even 'wilful.' They are dealt with, in many respects, as if the harm were intended, so that they become in effect a hybrid between intent and negligence, occupying a sort of penumbra between the two." (Footnotes omitted.) Prosser, Torts (4th ed), § 31, pp 145-146. (Emphasis added.)

In addition, the definition of "reckless disregard

---

[19] Further confirmation of the wide acceptance of the *Gibbard* definition is evidenced by the fact that at least one encyclopedia specifically cites the three-pronged test in describing the elements necessary to characterize behavior as wanton or wilful. See 57 Am Jur 2d, Negligence, § 101, p 452.

of safety" set forth in the Restatement of Torts, 2d, closely parallels the *Gibbard* formulation for wilful and wanton misconduct:

> "The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, *knowing or having reason to know* of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." 2 Restatement Torts, 2d, § 500, p 587. (Emphasis added.)

The comments to the Restatement are also consistent with the *Gibbard* distinction between negligence and recklessness: negligent conduct is characterized by "mere inadvertence, incompetence, [or] unskillfulness", while recklessness "requires a conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man". 2 Restatement Torts, 2d, § 500, Comment g, p 590. Actual knowledge of the risk is not required to classify behavior as reckless; it is sufficient if plaintiff can prove that defendant "knows or has reason to know of circumstances which would bring home to the realization of the ordinary, reasonable man the highly dangerous character of his conduct". 2 Restatement Torts, 2d, § 500, Comment c, p 589.[20]

---

[20] At the other end of the continuum, the distinction between wilful and wanton misconduct and intentional wrongdoing relates to the actor's state of mind, often assessed by the surrounding circumstances. While the actor must intend to perform the reckless act itself, he need not necessarily intend the injurious result to be charged with wanton and wilful misconduct. "[I]t is enough that, indifferent to consequences, the defendant intentionally acted in such

*Thone's* apparent adoption of an "affirmatively reckless act" requirement for wilful and wanton misconduct adds an element not required either by these accepted common-law definitions or by prior precedent of this Court. *Thomas, supra.* Further, it creates conceptual inconsistency, in view of the fact a *failure* to act in the face of a duty may be just as "reckless, wanton or wilful" as an *affirmative* act. See, *e.g.,* 2 Restatement Torts, 2d, § 500, p 587. *Cf. Lyshak v Detroit,* 351 Mich 230; 88 NW2d 596 (1957).

The additional requirement would also introduce a new area of confusion into a subject already fraught with misunderstanding. In most situations a court can find an affirmative act by viewing the facts from a different perspective. For example, in the instant case, one can regard defendant's alleged misconduct as a *failure* to act, either to destroy the structure or to warn swimmers of the danger created by its continued existence. Conversely, plaintiffs have focused on the city's *affirmative* act of flooding the area without first removing the structure.

By the same token, continuing to maintain Lake Adrian as a reservoir without taking precautions against the risk of harm caused by the structure can also be regarded as an *affirmative* act on defendant's part. This difference in approach should not determine defendant's liability.[21]

a way that the natural and probable consequences of his conduct was injury to another." 57 Am Jur 2d, Negligence, § 101, p 451. See also 2 Restatement Torts, 2d, § 500, Comment f, p 590.

[21] A number of panels of the Court of Appeals, in addition to the panel in the instant case, have echoed *Zeni's* and *Thone's* criticism of the *Gibbard* test. In *Crawford v Consumers Power Co,* 108 Mich App 232; 310 NW2d 343 (1981), the Court followed *Thone's* definition of wilful and wanton misconduct. In *Lucchesi v Kent County Road Comm,* 109 Mich App 254; 312 NW2d 86 (1981), the panel repeated the *Zeni-Thone* censure of the three-part test, but nevertheless properly felt constrained by precedent to apply it to the facts presented.

On the other hand, use of the *Gibbard* definition furthers the policy of MCL 300.201; MSA 13.1485 by adequately protecting landowners from liability for ordinary negligence, thereby encouraging them to keep their lands open for recreational use. But at the same time, the courts should not preclude recovery for injury caused by conduct which reflects a greater degree of culpability. The *Gibbard* test for wanton and wilful misconduct strikes the proper balance.[22]

Accordingly, following *Thomas,* we hold that the three-pronged *Gibbard* formula defines a threshold burden which a plaintiff must satisfy to state a cause of action under the recreational use statute.

The plaintiff's son had been killed when he drove off the edge of a mound of gravel in a pit owned and operated by defendant. Affirming a jury award for the plaintiff, the Court of Appeals emphasized the defendant's conduct in creating an obviously dangerous condition in the way it removed material from the mound. The defendant also was aware that its gravel pit was used by the public for recreational purposes.

[22] Citing *Hoag v Paul C Chapman & Sons, Inc,* 62 Mich App 290; 233 NW2d 530 (1975), defendant City of Adrian argues that the concept of wilful and wanton misconduct includes the same elements as gross negligence, *i.e.,* last clear chance, plus an element of recklessness. See also Littlejohn, *Torts: 1974 Annual Survey of Michigan Law,* 21 Wayne L Rev 665 (1975). We reject that interpretation. First, the logical implication of defendants' contention is that any claim under the recreational use act would require an allegation of subsequent negligence, whether as an element of gross negligence or wilful or wanton misconduct. This Court specifically rejected such a requirement in *Thomas,* holding that the plaintiffs had stated facts sufficient to give rise to a cause of action under the statute in spite of the fact that subsequent negligence had not been alleged.

Second, the Court of Appeals opinion cited in support of defendant's proposition is internally contradictory. In *Hoag,* the Court noted that, in the guest passenger context, gross negligence and wilful and wanton misconduct had been interpreted as synonymous, with both equivalent to common-law wilful and wanton misconduct. However, as this Court has repeatedly stated, instances of subsequent negligence in a guest passenger situation are virtually non-existent, *Finkler v Zimmer,* 258 Mich 336; 241 NW 851 (1932); *Riley v Walters,* 277 Mich 620; 270 NW 160 (1936) (opinion of Justice POTTER), and liability has been found under the statute without an allegation of such behavior. The *Hoag* panel nevertheless concluded that common-law wilful and wanton misconduct requires such an allegation.

While *Thomas* labeled the cause of action "gross negligence", in the interest of consistency with the common law from which the concept is derived, we prefer the term "wilful and wanton misconduct" to describe the threshold test.[23] In the instant case, however, the specific terminology is less important

[23] We hesitate to treat the concept of gross negligence as being without an independent meaning under the recreational use statute, particularly when, unlike in the guest passenger situation, facts reflecting subsequent negligence may arise. Especially in these circumstances, this Court should not presume that the Legislature meant to say the same thing twice using different words. " '[I]f possible every part of a statute must be given effect.' " *Klopfenstein v Rohlfing,* 356 Mich 197, 202; 96 NW2d 782 (1959). We thus hold that, at a minimum, gross negligence under the recreational use act, as at common law, incorporates the doctrine of last clear chance.

However, we do not decide whether the introduction of comparative negligence into Michigan tort law expands this narrow interpretation of gross negligence. Plaintiffs argue only that gross negligence should be defined by the three-part *Gibbard* test. We have already incorporated this test into the recreational use act under the concept of wilful and wanton misconduct. Plaintiffs do not specifically present any other formulation of gross negligence for this Court's consideration. Thus, any further development of the meaning of that doctrine must await a future case.

Some jurisdictions have adopted theories of degrees of negligence and define gross negligence as an extreme departure from ordinary care or lack of even slight care. Increasingly, however, courts are rejecting this approach at common law. See Prosser, Torts (4th ed), § 34, pp 183-184; 57 Am Jur 2d, Negligence, § 99, pp 447-449. Nevertheless, in one recent case, a Michigan court, reasoning that the last clear chance doctrine was inapplicable to the facts before it, gave gross negligence such a degrees-of-care connotation. *Nationwide Mutual Fire Ins Co v Detroit Edison Co,* 95 Mich App 62; 289 NW2d 879 (1980). See also *St Onge v Detroit & M R Co,* 116 Mich App 128; 321 NW2d 865 (1982). A few earlier cases also seemed to indicate that gross negligence is not completely limited to subsequent negligence. See, *e.g., Nass v Mossner,* 363 Mich 128; 108 NW2d 881 (1961).

The idea of degrees of negligence has been soundly criticized as an unworkable and confusing basis upon which to ground liability land legal rights. Prosser, *supra,* 182; Morris, *Gross Negligence in Michigan—How Gross Is It?,* 16 Wayne L Rev 457 (1970). Further, it is argued that the concept conflicts with proper negligence analysis, in which the *standard of conduct* required may vary in particular circumstances, but the *degree of care, i.e.,* that of a reasonable person in the same or similar circumstances, does not change. *Massey v Scripter,* 401 Mich 385; 258 NW2d 44 (1977); Morris, *supra.*

In the instant case, plaintiffs' complaint contains no allegation of subsequent negligence. Therefore, the award of summary judgment to defendant on the gross negligence count is affirmed.

than the determination of whether plaintiffs' allegations have satisfied that test.

### D

This Court has repeatedly acknowledged that it is most difficult to determine, in a particular case, where negligence ends and wilful and wanton misconduct begins. *Goss v Overton,* 266 Mich 62; 253 NW 217 (1934); *Finkler v Zimmer,* 258 Mich 336; 241 NW 851 (1932). While general rules and definitions may provide guidelines, each case must be decided on its own unique facts. Applying the three elements of the *Gibbard* test to the facts in the instant case, we conclude that plaintiffs have alleged sufficient facts to withstand defendant's motion for summary judgment on the wilful and wanton misconduct claim. This conclusion is reached in the context of the fact that summary judgment is almost always inappropriate in this type of case.

First, plaintiffs' factual allegations support a finding that defendant city knew of the submerged structure in Lake Adrian and that it knew or had reason to know of the danger created. According to plaintiffs' complaint, the structure appears on maps of the land before it was flooded and is now visible when the water level is low. Further, from the existence of tire tracks, a nearby parking area, and a footpath to the water, the city knew that swimmers permissively used the lake and were therefore exposed to the danger created by the submerged structure.

Second, plaintiffs allege that defendant had the ability to avoid the harm "by ordinary care and diligence in the use of the means at hand", *Gibbard,* either by removing the structure, or, more simply, by warning of its existence. The distinction

drawn by the trial court, that defendant did not build the structure, but merely failed to remove it upon flooding the land, should not relieve the city of liability. The simple fact remains that defendant's actions in creating Lake Adrian without first razing the structure produced a situation which allegedly led to decedent's death. In addition, plaintiffs contend that by failing to prevent the use of Lake Adrian for swimming in the face of knowledge of such use, defendant in effect encouraged or at least permitted this activity, with its attendant exposure to danger. Again, it can be inferred, defendant could have avoided the harm "by ordinary care and diligence" by prohibiting swimming or wading in the lake.

Finally, plaintiffs assert, defendant failed to use ordinary care and diligence to avert the danger when it was apparent that such inaction was "likely to prove disastrous to another", *Gibbard,* and this omission led to Christopher Burnett's death. In essence, plaintiffs alleged that the structure allowed the decedent, who could not swim, to go out much farther into the lake than he otherwise could have gone. Only because of its existence was he able to walk all the way out to the point where he suddenly encountered deep water with an "unnatural current" and drowned.

Whether it was apparent to the ordinary mind that the alleged omissions in this case would likely prove disastrous to another is an issue for jury determination. Many of plaintiffs' other contentions also involve issues of fact and conclusions upon which reasonable minds can differ. This Court has indicated that even in doubtful cases, questions of the existence of gross negligence and wilful or wanton misconduct are for the jury, not the judge, to decide. *Tien v Barkel,* 351 Mich 276;

88 NW2d 552 (1958). Plaintiffs in the instant case should be allowed to present evidence to the jury in support of their allegations of wilful and wanton misconduct.

Thus, we reverse the decision of the trial court awarding summary judgment to defendant with respect to plaintiffs' claim of wilful and wanton misconduct under the recreational use act.

## IV

Plaintiffs allege further that in creating and operating Lake Adrian with its submerged structure the city maintained an attractive nuisance, and that as a result of this condition plaintiffs' decedent drowned. According to plaintiffs, defendant should be held liable for its failure to protect decedent from the danger presented by the nuisance. *Lyshak v Detroit,* 351 Mich 230; 88 NW2d 596 (1957); 2 Restatement Torts, 2d, § 339, p 197.

The operative portion of the recreational use act provides:

"No cause of action shall arise for injuries to any person * * * unless the injuries were caused by the gross negligence or wilful and wanton misconduct of the owner, tenant, or lessee." MCL 300.201; MSA 13.1485.

While the effect of this language is to hold landowners and occupiers liable for behavior which is either more culpable or involves a risk of harm substantially greater than that required to render the conduct negligent, the statute clearly bars claims based on ordinary negligence.

The trial judge concluded, in effect, that the statute prohibited recovery on the basis of attractive nuisance unless plaintiffs could simultane-

ously prove gross negligence or wilful and wanton misconduct on the part of defendant. The Court of Appeals agreed, although the panel further analyzed the claim and held that plaintiffs had not alleged facts sufficient to support the attractive nuisance count.

With respect to nuisance actions in general, this Court has stated:

"Primarily, nuisance is a condition. Liability is not predicated on tortious conduct through action or inaction on the part of those responsible for the condition. Nuisance may result from want of due care (like a hole in a highway), but may still exist as a dangerous, offensive, or hazardous condition even with the best of care." *Buckeye Union Fire Ins Co v Michigan,* 383 Mich 630, 636; 178 NW2d 476 (1970).

Plaintiffs argue that, in view of this characterization of nuisance as a condition, the trial court's requirement that the attractive nuisance action be grounded in gross negligence or wilful or wanton misconduct was erroneous.

While this argument may have some logical and theoretical appeal, it cannot prevail in the narrow recreational use act context. The statute clearly requires that, to determine liability, a court look to the nature and blameworthiness of a defendant's conduct. In these circumstances, we cannot countermand the manifest dictates of the Legislature.

Thus, to the extent that the facts alleged in plaintiffs' attractive nuisance claim are grounded in negligent conduct on defendant's part, the claim is barred by the express terms of the statute. To the extent the complaint sets forth facts sufficient to support an allegation of wilful and wanton

misconduct, it is duplicative of the cause of action based solely on that form of conduct.

The clear language of the recreational use act also precludes plaintiffs' contention that, since the statute neither restricted nor expanded existing common-law rights and duties, *Thomas v Consumers Power Co,* 58 Mich App 486; 228 NW2d 786 (1975), *aff'd in pertinent part* 394 Mich 459; 231 NW2d 653 (1975) and, since the attractive nuisance doctrine has been an important part of the common law in Michigan, a claim of nuisance should be recognized concurrently with allegations of liability under the act. See also *Crawford v Consumers Power Co,* 108 Mich App 232; 310 NW2d 343 (1981). This argument must be rejected. The specific and unmistakable statutory language overrides the courts' broad statements regarding the effect of the act upon the common law. Further, when the Legislature states "[n]o cause of action * * * unless", a court cannot engraft onto the proviso a cause of action not specified therein. *Cf.* MCL 691.1407; MSA 3.996(107) (governmental immunity statute).[24]

---

[24] In several cases governed by the recreational use act, the Court has appeared to recognize a concurrent claim based on attractive nuisance. Close examination, however, reveals that this recognition is more apparent than real. In two of the cases, the Court of Appeals cited the attractive nuisance doctrine but clearly grounded its decision upon the sufficiency of plaintiffs' allegations of gross negligence or wilful or wanton misconduct. See *Taylor v Mathews,* 40 Mich App 74; 198 NW2d 843 (1972), and *Magerowski v Standard Oil Co,* 274 F Supp 246 (WD Mich, 1967). In *Anderson v Brown Brothers, Inc,* 65 Mich App 409; 237 NW2d 528 (1975), the Court of Appeals majority reversed the trial court's grant of summary judgment for defendant as to plaintiff's claim of attractive nuisance. The panel was divided, however, as to the reasoning for its decision. One judge concluded that a nuisance claim could be maintained notwithstanding the recreational use statute, another reasoned that the allegation was grounded in negligence and thus barred by the statute, while the third felt that the act did not govern the particular case. Finally, in *Heider v Michigan Sugar Co,* 375 Mich 490; 134 NW2d 637 (1965), this Court held that the trial court erred in allowing the case to go to the jury on the issue of attractive nuisance. With respect to the

Accordingly, we affirm the trial court's grant of summary judgment as to plaintiffs' claim of attractive nuisance.

## V

For the foregoing reasons, we reverse the trial court's grant of summary judgment as to plaintiffs' claim of wilful and wanton misconduct. In all other respects, the judgments of the trial court and the Court of Appeals are affirmed. The cause is remanded for further proceedings not inconsistent with this opinion.

WILLIAMS and LEVIN, JJ., concurred with BLAIR MOODY, JR., J.

recreational use act, three Justices held that it barred the nuisance claim, and three would have remanded the case for consideration of the applicability of the statute. Only two Justices considered the nuisance count concurrently with the statutory claims.

In one case, *Crawford v Consumers Power Co*, 108 Mich App 232; 310 NW2d 343 (1981), the Court of Appeals did in fact recognize a nuisance claim as independent from allegations of gross negligence or wilful and wanton misconduct. To the extent that the *Crawford* decision is inconsistent with the holding in the instant case, it is disapproved.