SIMONSON v. MICHIGAN LIFE INSURANCE COMPANY

1. PLEADING—COMPLAINT—FRAMING ISSUES.

A complaint need not anticipate the defendant's response to the complaint because the purpose of the complaint is to give notice of the nature of the claim sufficient to permit the opposite party to take a responsive position; the exploratory processes of discovery, pretrial conference, and summary judgment, combined with liberal amendments to pleadings, are designed to carry the burden of framing the particular issues to be tried (GCR 1963, 111.1).

2. PLEADING—ESTOPPEL—FAILURE TO PLEAD—REPLY—COURT RULES.

Plaintiff's failure to plead estoppel in his reply to defendant's answer did not preclude presentation of evidence on that issue where defendant's answer did not demand a reply, because if a pleading sets forth a claim to which a responsive pleading is not required, any defense to that claim may be asserted at trial (GCR 1963, 111.3).

3. PLEADING—REPLY—REQUIRED REPLY—COURT RULES.

A reply to an answer is required only when expressly demanded by the defendant in his answer (GCR 1963, 110.1).

———————

REFERENCES FOR POINTS IN HEADNOTES

[1] 41 Am Jur, Pleading §§ 83, 87.
[2, 4] 41 Am Jur, Pleading § 174 *et seq.*
[3] 41 Am Jur, Pleading § 175.
[5] 43 Am Jur 2d, Insurance §§ 779–790.
Insured's statement, in application for life or health insurance or its reinstatement, that he is in good health, as absolute representation of, or mere statement of his good-faith belief in, his good health. 26 ALR3d 1061.

4. Estoppel—Misrepresentation—Failure to Plead—Prejudice—
     Notice.

> Plaintiff administrator was not barred from introducing evi-
> dence in a trial to recover under a creditor's life insurance
> policy that defendant insurer was estopped from claiming
> that the decedent misrepresented that he was in good health
> at the time he purchased the policy, even though the issue
> of estoppel was not raised in plaintiff's reply to defendant's
> answer, at the pretrial conference, or in plaintiff's counsel's
> opening remarks where the decedent, when he bought the policy,
> was suffering from a paralyzed left arm, wore a brace on his
> leg, walked with a noticeable limp, and used a cane constantly
> and the bank cashier who sold the policy observed the de-
> cedent's obvious physical impairments, because defendant's
> counsel should have become aware of the cashier's observa-
> tion while preparing his case and should have anticipated the
> estoppel issue.

5. Insurance—State of Health—Misrepresentation.

> Plaintiff's decedent in applying for creditor's life insurance
> did not misrepresent the state of his health when he signed
> the application which stated that he was in sound health even
> though he had suffered a stroke which had left permanent
> visible effects on him, such as a paralyzed arm and the ne-
> cessity of wearing a leg brace, and even though he did not
> mention that he had diabetes and hypertension, where the
> bank cashier who handled the application was aware of the
> stroke's effects on the decedent and where decedent was
> not asked to itemize his illnesses but only to sign a "sound
> health" statement, because it is perfectly reasonable for a
> man like plaintiff's decedent who in spite of his obvious physical
> condition is being solicited to buy insurance, to presume that
> a little diabetes added to his condition would not affect his
> being considered in "sound health"; to allow the insurer to
> accept premiums from a man who had the plaintiff's decedent's
> obvious physical impairments and then to avoid payment be-
> cause the man also had diabetes would be a miscarriage of
> justice.

Appeal from Houghton, Stephen D. Condon, J.
Submitted Division 3 October 4, 1971, at Marquette.
(Docket No. 10364.)   Decided November 22, 1971.

Complaint by Robert Simonson, administrator of the estate of Oliver Simonson against Michigan Life Insurance Company for proceeds of a creditor life insurance policy. Judgment for plaintiff. Defendant appeals. Affirmed.

*Wisti & Jaaskelainen,* for plaintiff.

*Messner, LaBine & Vairo* (by *David R. Mechlin*), for defendant.

Before: FITZGERALD, P. J., and BRONSON and T. M. BURNS, JJ.

T. M. BURNS, J.   On November 4, 1966, the Merchants & Miners Bank of Calumet made a loan to Oliver Simonson, the decedent, of $5,331.12. After the loan had been approved, the bank's cashier asked the decedent if he wished to purchase creditor life insurance. The decedent replied in the affirmative. The cashier then explained the extent of coverage available to the decedent. Finally, the cashier entered the decedent's age in the appropriate blank in a writing entitled "Election and Agreement" and presented that writing to the decedent for his signature. The final paragraph of the document, located immediately above the signature blank, stated:

"For the purpose of securing such insurance I declare that I am in sound health and my attained age is 54 years."

No other information as to the decedent's state of health was requested either on the application or by the cashier. The decedent signed the application. The cashier witnessed that signature, noted on the application that it was accepted, and issued to the decedent the required certificate.

In 1958 the decedent had suffered a stroke. As a result of that stroke, the decedent's left arm was totally paralyzed. The decedent also wore a brace on his left leg, walked with a noticeable limp, and used a cane constantly. He had never been able to resume employment after the stroke.

At the time of his death, the decedent owed the bank $5,124.96. Pursuant to the group policy, the bank made a claim on defendant for 80% of the balance. Defendant refused to pay on the ground that the decedent's representation of "sound health" was a material misrepresentation which nullified the policy *ab initio*. As a consequence of the refusal to pay, the balance of the loan became a burden on the estate of the decedent. The administrator then instituted this action to compel payment by defendant to the bank.

At trial the cashier admitted knowing about the decedent's stroke and the effects thereof. However, the decedent also suffered from diabetes and hypertension and this fact, contended defendant, was a misrepresentation by the decedent as to the state of his health and, therefore, the policy was void *ab initio*.

Plaintiff claimed (a) that the decedent did not materially misrepresent his health, and (b) in the alternative, had decedent misrepresented the state of his health, since the bank's cashier was aware of the decedent's stroke and its effects, defendant was estopped from using that misrepresentation to void the policy.

In rebuttal defendant argued (a) that the decedent had materially misrepresented the state of his health, and (b) objected to the trial court's admission of evidence on the issue of estoppel since that issue had not been raised in plaintiff's pleadings or

mentioned at the pretrial conference or in opening argument.

At the conclusion of their proofs, counsel for the defendant moved for a directed verdict. They claimed that because plaintiff had invoked the doctor-patient privilege and thereby prevented "full disclosure and proof of the nature of the medical impairment" suffered by the decedent, the decedent's misrepresentation must be presumed to be material. The motion was taken under advisement pending a jury verdict. After the jury verdict in plaintiff's favor, the motion was denied.

On this appeal defendant first reasserts its objection to the admission of evidence on the question of estoppel since that issue was not raised in plaintiff's pleadings.

We concur with the trial judge that plaintiff's pleadings were adequate to allow presentation of evidence on the issue of estoppel.

A complaint need not anticipate defendant's response thereto. The purpose of the complaint is to give notice of the nature of the claim sufficient to permit the opposite party to take a responsive position. The exploratory processes of discovery, pretrial conference, and summary judgment, combined with liberal amendments to pleadings, are designed to carry the burden of framing the particular issues to be tried. GCR 1963, 111.1; 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 180.

Plaintiff's failure to plead estoppel in his reply to defendant's answer did not preclude presentation of evidence on that issue. If a pleading sets forth a claim to which a responsive pleading is not required, any defense to that claim may be asserted at trial. GCR 1963, 111.3. A reply to an answer is required only when expressly demanded by the defendant in

his answer. GCR 1963, 110.1. Since defendant's answer did not demand a reply, a responsive pleading by plaintiff was not required. Therefore, any response to defendant's affirmative defense could be asserted at trial.

Nor do we believe that the failure of plaintiff's counsel to mention the issue of estoppel at the pretrial conference or in their opening remarks at trial so surprised counsel for defendant as to prejudice their client's contest of the case. *Cf.* Committee Note to GCR 1963, 118.3, 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 409. In preparation for trial, counsel for defendant should have become aware of the fact that the cashier who sold the policy had observed the decedent's obvious physical impairments. With that information, counsel for defendant should have anticipated plaintiff's claim that defendant was estopped to plead misrepresentation. We therefore find no error in the trial court's ruling that plaintiff could present evidence on his claim of estoppel.

Defendant next contends that because plaintiff invoked the doctor-patient privilege, defendant was prevented from proving the exact nature of the decedent's medical impairments and, therefore, the decedent's misrepresentation as to the state of his health was, as a matter of law, a material misrepresentation, voiding the policy *ab initio*.

MCLA § 500.2218(4) (Stat Ann 1971 Cum Supp § 24.12218[4]), provides in part:

"If in any action to rescind any contract or to recover thereon, any misrepresentation is proved by the insurer, and the insured or any other person having or claiming a right under the contract, shall prevent full disclosure and proof of the nature of the medical impairment, the misrepresentation shall be presumed to have been material."

The decedent's personal physician was called as a witness and testified that the decedent had consulted him some 30 times over the years 1963 through 1967. However because of plaintiff's invocation of the doctor-client privilege, the doctor was not allowed to testify to the nature of the decedent's ailments which had caused him to seek the doctor's aid so frequently. It is the defendant's position that it was thus prevented from proving "the nature of the medical impairment" suffered by the decedent. Therefore, contends defendant, since the above statute creates a presumption that any misrepresentation is a material one, the policy is void *ab initio.*

However, in order to take advantage of the presumption created by the above statute, defendant must first prove there was a misrepresentation. Certainly, the decedent could not have thought that he was concealing the fact that he had suffered a stroke when he signed the application. The effects of the stroke simply could not be hidden.

Whether or not decedent thought he was concealing his diabetes and hypertension we cannot tell. However, it is our opinion that given the decedent's obvious unsound condition, the insurer should have sought additional information about the decedent's health. Many people can have diabetes and even hypertension and still be considered to be in "sound health". Obviously, however, a man who has suffered a severe stroke will be much more affected by these conditions than the average person otherwise healthy.

Had the decedent actively concealed his conditions by stating on a form or in some other manner that he did not suffer from them, then we would be inclined to hold that the conditions were misrepresented by the decedent. However, we are not dealing here with a specific itemization of various ill-

nesses and medical tests performed on the deceased; rather, we are only dealing with a general "sound health" provision.

To allow the defendant to accept premiums from a man who is suffering from obvious physical impairments and then refuse to pay because it turns out that the man also has diabetes would, in our opinion, amount to a miscarriage of justice. It also seems perfectly reasonable to us for a man like the deceased who, in spite of his condition, is being solicited to buy insurance, to presume that a little diabetes added to his condition would not affect his being considered to be in "sound health".

The phrase "good health" has been interpreted as follows:

" 'Good health' as the term is used in an insurance policy means that insured is free from disease that would seriously affect the general soundness of the system, and that he has not been attended by a physician for a serious ailment." *Prudential Insurance Company* v. *Ashe* (1934), 266 Mich 667, 670.

It is obvious to us that the decedent was not in "sound health" due to his stroke alone. Therefore, it is our opinion, that when he signed the application which proclaimed him to be in sound health there could be no misrepresentation about it. Accordingly, we find no error in the trial court's refusal to direct a verdict in defendant's favor for the reason that they had been misrepresented.

Affirmed.

All concurred.