ST ONGE v DETROIT & MACKINAC RAILWAY COMPANY

Docket No. 52316. Submitted May 12, 1981, at Lansing.—Decided
    May 5, 1982. Leave to appeal applied for.

Emmet L. St. Onge was injured when the motorcycle on which he
    was riding collided with a Detroit & Mackinac Railway Com-
    pany train. St. Onge and his wife filed suit in Alpena Circuit
    Court against Detroit & Mackinac alleging that employees of
    the defendant railroad were negligent. During the trial, the
    plaintiffs attempted to present testimony tending to establish
    that the defendant's employees were wilfully and wantonly
    negligent. The defendant objected to the testimony because the
    plaintiffs had not pled gross misconduct or gross negligence.
    The defendant also objected to permitting the plaintiffs to
    amend their pleadings to allege gross negligence. The court,
    Joseph P. Swallow, J., held that the plaintiffs' complaint did
    not allege gross negligence, denied the plaintiffs' motion to
    amend their pleadings and refused to instruct the jury on a
    theory of gross negligence. The court entered judgment for the
    defendant on a jury verdict of no cause of action. The plaintiffs
    appeal. *Held:*

    The trial court erred in ruling that the plaintiffs' complaint
    did not allege gross negligence and by failing to instruct the
    jury in accordance with that theory. Although the plaintiffs'
    complaint could have been more specific, the Court of Appeals
    believes that the complaint gave the defendant sufficient notice
    of the nature of the plaintiffs' claims to permit the defendant to
    take a responsive position. The trial court adequately in-
    structed the jury that both parties had a duty to exercise
    reasonable care when entering a railroad crossing.

    Reversed and remanded.

    CYNAR, J., dissented. He believes that the plaintiffs should
    not be granted a new trial because the plaintiffs' complaint was
    not sufficiently specific to put the defendant on notice that the

REFERENCES FOR POINTS IN HEADNOTES

[1] 57 Am Jur 2d, Negligence § 387.
[2] 61A Am Jur 2d, Pleading § 81.
[3] 61A Am Jur 2d, Pleading §§ 307, 310.

plaintiffs were claiming more than a case of simple negligence. He believes that the testimony offered to support a theory of "gross negligence", "last clear chance", or subsequent negligence was not substantial enough to support the existence of such theories. He would affirm the decision of the trial court.

OPINION OF THE COURT

1. NEGLIGENCE — GROSS NEGLIGENCE — LAST CLEAR CHANCE.

Gross negligence may be described as a failure to exercise that degree of care which even a careless individual would employ under given circumstances; however, under the common law a plaintiff's allegation that a defendant acted with gross negligence amounts to an allegation that the defendant had the last clear chance to avoid the accident.

2. PLEADING — COMPLAINTS — COURT RULES.

A complaint need not anticipate a defendant's response to the complaint because the purpose of the complaint is to give notice of the nature of the claim sufficient to permit the opposite party to take a responsive position (GCR 1963, 111.1).

DISSENT BY CYNAR, J.

3. PLEADING — AMENDMENT OF PLEADINGS.

*Granting or refusing permission to amend pleadings rests in the discretion of the trial court.*

*Kasoff, Young, Gottesman, Kovinsky, Friedman & Walkon, P.C.,* for plaintiffs.

*Martin, Bacon & Martin, P.C.,* for defendant.

Before: R. M. MAHER, P.J., and ALLEN and CYNAR, JJ.

PER CURIAM. The plaintiffs appeal by right the denial of their motion for a new trial by the circuit court on February 16, 1979.

On October 3, 1975, the plaintiffs filed a complaint alleging that, as a result of the defendant's employees' negligence, Emmet St. Onge (the plaintiff), was injured when his motorcycle collided with the defendant's train on June 29, 1974. The engi-

neer of the train, two brakemen, and a conductor
were responsible for a "switching" movement near
the Miller Street crossing in Alpena on the day of
the accident. "Switching" involves a series of
movements whereby cars are maneuvered off the
main track onto a spur track, and then recoupled
with the train for transportation to a predeter-
mined destination. During the switching proce-
dure, the flashers at the crossing were on, and the
train's whistle and bell were activated. When the
train approached to within 60 feet of the Miller
Street crossing, the engineer saw plaintiff heading
toward the intersection. The train was moving at a
speed of approximately 2 miles per hour; plaintiff
was traveling at a speed of 40 to 50 miles per
hour. The engineer continued to watch plaintiff as
they both approached the crossing, and he contin-
ued to blow the train's whistle. When the engineer
realized that plaintiff would not be able to stop in
time to avoid a collision, the engineer applied the
emergency brakes, but (of course) it was too late;
plaintiff skidded toward the train after it crossed
the intersection. The good times would no longer
roll for plaintiff; the accident cost him both legs.

The jury returned a verdict of no cause of ac-
tion, and the plaintiffs moved for a new trial. The
circuit court denied the motion, and the plaintiffs
appeal.

The plaintiffs included, *inter alia,* the following
allegations in their complaint:

"5. That the defendant owed a duty to your plaintiff
to operate its railroad in a safe and prudent manner so
as not to cause injury to the person of your plaintiff.

"6. That the defendant violated that duty by operat-
ing said railroad in a careless, negligent and reckless
manner, to-wit:

"(a) failing to have flasher lights functioning at the intersection of a public highway;

"(b) failing to place a flag man at the intersection of a public highway to give warning to the vehicular traffic intersecting the railroad track;

"(c) failing to make an observation of traffic proceeding on Miller Street before entering said intersection;

"(d) failing to take the necessary steps to stop the locomotive engine and railroad cars when it became obvious that traffic would be proceeding across the railroad tracks at the public surface highway."

During their case in chief, the plaintiffs attempted to present certain testimony tending to establish "willful and wanton negligence". The defendant objected to the testimony on the ground that the plaintiffs had not pled gross misconduct or gross negligence. The defendant also objected to permitting amendment of the pleadings, claiming that the plaintiffs were attempting to "introduce a totally different theory into the lawsuit, one which would bar defendant's defense of contributory negligence". The circuit court ruled that the plaintiffs' complaint did not allege gross negligence, denied the plaintiffs' motion to amend their pleadings, and refused to instruct the jury on a theory of gross negligence. We reverse.

The term "gross negligence" has at least two meanings in Michigan. Under the common law, an allegation of gross negligence apparently amounts to an allegation that the defendant had the last clear chance to void the accident. *Nationwide Mutual Fire Ins Co v Detroit Edison Co,* 95 Mich App 62, 66; 289 NW2d 879 (1980). However, an allegation of gross negligence also apparently constitutes an allegation that the defendant failed "to exercise the degree of care that even a careless individual would employ under the circumstances". *Nation-*

*wide Ins, supra,* 67. Under either theory, contributory negligence on the part of plaintiff would not bar recovery.

Although the plaintiffs' complaint could have been more specific, we believe that it gave sufficient notice of the nature of the plaintiffs' claims to permit the defendant to take a responsive position. *Simonson v Michigan Life Ins Co,* 37 Mich App 79, 83; 194 NW2d 446 (1971). The complaint alleged that the defendant had acted in a "reckless" manner. The term "reckless" refers to a much greater violation of the standard of care than the term "negligent". The term "gross negligence"—when it is used to describe an extreme departure from the ordinary standard of care—has essentially the same meaning as the term "recklessness". Hence, the defendant received sufficient notice that it would have to defend against this theory.

We still must determine whether the complaint provided sufficient notice to the defendant that it would have to defend against a theory of recovery based on the last clear chance doctrine. The plaintiffs' complaint alleged that the defendant had failed "to take the necessary steps to stop the locomotive engine and railroad cars when it became obvious that traffic would be proceeding across the railroad tracks at the public surface highway". We believe that this allegation provided sufficient notice that the plaintiffs planned to contend that the defendant had the last clear chance to avoid the collision.

We conclude that the circuit court erred in ruling that the plaintiffs' complaint did not allege gross negligence and by failing to instruct the jury in accordance with that theory. Our disposition of this issue makes it unnecessary to decide whether

the circuit court also erred in refusing to permit the plaintiffs to amend their complaint.

The plaintiffs also contend that the circuit court erred by failing to instruct the jury that both plaintiff and the defendant had a duty to watch out for each other when entering an intersection. We have carefully reviewed the circuit court's instructions to the jury and have concluded that the court adequately instructed the jury that both parties had a duty to exercise reasonable care when entering a railroad crossing.

Reversed and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction. Costs to appellant.

CYNAR, J. *(dissenting).* I respectfully dissent from the determination of the majority that the plaintiffs are entitled to a new trial. In my view, *Nationwide Mutual Fire Ins Co v Detroit Edison Co,* 95 Mich App 62; 289 NW2d 879 (1980), supports a finding that the plaintiffs' complaint was not sufficiently specific to put the defendant on notice that the plaintiffs were claiming more than a case of simple negligence. *Nationwide* underscores the confusion attendant to the use of various supposedly "standard" terms in allegations of tort liability.

This is not, however, the sole ground of my dissenting opinion. My review of the record convinces me that the evidence offered in support of a theory of "gross negligence", a theory of "last clear chance", or a theory of subsequent negligence was simply not substantial enough to support the existence of such theories. Although the selective presentation of quotations from certain portions of testimony in the plaintiffs' brief might seem to compel the opposite conclusion, such a

conclusion appears unwarranted when the statements in question are viewed in context. It is clear that as soon as the engineer realized that plaintiff Emmet St. Onge would not stop, he applied the train's brakes. I think it is apparent that the engineer reasonably thought that plaintiff Emmet St. Onge could have and would have stopped up until the time plaintiff Emmet St. Onge apparently lost control of his motorcycle, going "over the handlebars". I would not find an abuse of discretion on the part of the trial court and therefore the plaintiffs are not entitled to a new trial. *Fred Gibbs, Inc v Old Colony Ins Co,* 30 Mich App 352, 355; 186 NW2d 396 (1971).

I note that the trial court grounded its ultimate decision on the untimeliness of the plaintiffs' motion to amend the complaint. I find the trial court's ruling proper under the authority of *Messer v Floyd Rice Ford, Inc,* 91 Mich App 644; 284 NW2d 139 (1979).

For all of the above reasons, I find no error in any of the rulings complained of by the plaintiffs. I would affirm.