965 F.2d 879
 Fed. Sec. L. Rep. P 96,818, RICO Bus.Disp.Guide 8018
 BOARD OF COUNTY COMMISSIONERS OF SAN JUAN COUNTY; Ron
Ashcroft, San Juan County Commissioner, Plaintiffs-Appellees,
v.
LIBERTY GROUP, a California Limited Partnership; Norman
Andrew Gurley, Defendants-Appellants,
and
Liberty Partners, Inc., a California Corporation; F.M.G.
Partners, a California General Partnership; Liberty Capital
Markets, Inc., a California Corporation; Chester Arthur
Walker, Jr.; Doyle Laverne Holmes; Robert Clayton Holmes;
Steve Ray Holmes, Defendants.
BOARD OF COUNTY COMMISSIONERS OF SAN JUAN COUNTY; Ron
Ashcroft, San Juan County Treasurer, Plaintiffs-Appellees,
v.
LIBERTY GROUP, a California Limited Partnership; Norman
Andrew Gurley; Liberty Partner, Inc., a California
Corporation; F.M.G. Partners, a California General
Partnership; Chester Arthur Walker, Jr.; Doyle Laverne
Holmes; Robert Clayton Holmes; Steve Ray Holmes, Defendants,
and
Liberty Capital Markets, Inc., a California Corporation,
Defendant-Appellant.
BOARD OF COUNTY COMMISSIONERS OF SAN JUAN COUNTY; Ron
Ashcroft, San Juan County Treasurer, Plaintiffs-Appellants,
v.
LIBERTY GROUP, a California Limited Partnership; Liberty
Capital Markets, Inc., a California Corporation,
Defendants-Appellees,
and
Prudential-Bache Securities, Inc., a Delaware corporation,
Garnishee-Appellee.
 Nos. 90-2266, 90-2275 and 91-2166.
 United States Court of Appeals,
Tenth Circuit.
 May 28, 1992.
 
 Don A. Proudfoot, Jr. of Graham & James, Los Angeles, Cal. (Alexis H. Johnson of Sutin, Thayer & Browne, Albuquerque, N.M., with him on the brief), for Liberty Group, Liberty Capital Markets, Inc. and Norman Gurley.
 James O. Browning (Raul A. Carrillo, Jr., with him on the brief), of Browning, Peifer & Wishner, P.A., Albuquerque, N.M., for garnishee-appellee Prudential-Bache Securities, Inc.
 James L. Dow of Dow Law Office, P.A., Carlsbad, N.M. (B.J. Baggett, Aztec, N.M., with him on the brief), for San Juan County.
 Before HOLLOWAY and McWILLIAMS, Circuit Judges, and CAUTHRON,* District Judge.
 HOLLOWAY, Circuit Judge.
 
 
 1
 This appeal arises from an action instituted by the plaintiff-appellee County of San Juan, State of New Mexico to recover damages it claims it sustained in securities transactions with the appellant Liberty Group. The County alleged violations of a number of federal securities laws and of RICO. After a jury returned a verdict against the defendants they moved for a new trial on the federal securities claim and for JNOV or a new trial on the RICO claim. These motions were denied. An appeal was taken to this court. Meanwhile cross motions to amend the judgment were made. The district court granted both motions, and Liberty Capital, the successor in interest to Liberty Group, appealed the grant of the County's motion. While this second appeal was pending, a writ of garnishment was issued to one of Liberty Capital's debtors. Liberty Capital moved to have the writ quashed. The district court quashed the writ and the County commenced the third appeal. The three appeals are consolidated here and will be disposed of by this opinion.
 
 
 2
 * In 1985 San Juan County, New Mexico adopted a new investment policy which provided that a portion of its funds was to be invested in various government backed securities. The County used a number of different brokers for these investments. Liberty Group was the County's broker for thirteen such transactions, with Norman Gurley (Gurley) acting as the Liberty Group account executive in charge of the County's transactions. On these transactions Liberty Group charged the County a markup over the price Liberty Group had paid for the bonds. The County was never informed of these markups, which it maintains were as high as 40%.
 
 
 3
 After the markups were discovered by the State Auditor, the County brought suit. The second amended complaint, upon which the trial was held, named Liberty Group; its general partners, Liberty Partners and F.M.G. Partners; Liberty Capital Markets, the successor in interest to Liberty Group; Norman Gurley; and Doyle Holmes, the President of Liberty Capital, as defendants.[1] The County sought damages for violations of SEC Rule 10b-5 and the Racketeer Influenced and Corrupt Organizations Act (RICO). 18 U.S.C. § 1962(c). The jury found that Norman Gurley, Doyle Holmes, and Liberty Group had violated 10b-5 and that Gurley and Liberty Group had violated RICO. Damages were assessed at $188,223. On the basis of separate motions by the County and Doyle Holmes, the trial court amended the judgment to treble the damages as provided by RICO and granted judgment non obstante veredicto in Holmes' favor.
 
 
 4
 The County and Liberty Capital Markets (Liberty Capital) then filed cross motions to alter or amend the judgment. The County sought to have the judgment reflect the parties' pretrial stipulations that Liberty Capital Markets was the successor in interest to Liberty Group and that when Liberty Capital succeeded to Liberty Group's registration as a broker-dealer it had filed a form with the State of New Mexico announcing that it was assuming all of Liberty Group's assets and liabilities. Liberty Capital moved to have the judgment reflect the verdict that it was not liable for any wrongdoing of its own and to have those counts not submitted to the jury dismissed with prejudice. The trial judge granted both motions and entered a corresponding amended judgment.
 
 
 5
 Gurley and Liberty Group timely brought the first of these appeals, No. 90-2266, from the denial of their new trial and JNOV motions. They argue that the district court erroneously instructed the jury on the requisite state of mind for a 10b-5 violation and that there was insufficient evidence to support the finding of a RICO enterprise. Liberty Capital appealed the amended judgment on December 13, 1990, commencing appeal No. 90-2275. Liberty Capital's principal claim is that the jury verdict did not find it liable as Liberty Group's successor and that the amended judgment should be changed to omit any reference to Liberty Capital as Liberty Group's successor in interest.
 
 
 6
 After entry of the amended judgment and the consequent appeals to this court, the County sought to execute what it claimed to be a judgment against Liberty Capital as Liberty Group's successor in interest. A writ of garnishment was issued naming Prudential-Bache Securities, Inc. (Prudential-Bache) as garnishee. Prudential-Bache held notes in Liberty Capital's account to cover Liberty Capital's trading obligations. Liberty Capital filed a motion to quash the writ. The trial court denied the motion to quash. Liberty Capital then filed a motion seeking to have the court clarify and reconsider its denial of the motion to quash.
 
 
 7
 On June 17, 1991 the district court issued a memorandum opinion and order in which it quashed the writ. It held that the propriety of the writ turned on whether Liberty Capital was liable by virtue of successor liability for the judgment against Liberty Group. Since the jury had not reached the issue, the district court opined that it could appropriately determine that question itself. It held that since the matter had not been litigated and since there is no vicarious RICO liability, Liberty Capital could not be named a judgment debtor. The writ was accordingly quashed. The County appealed this decision in Appeal No. 91-2166, which forms the third appeal consolidated here. The County argues that the district court was without jurisdiction to alter the judgment once the case was on appeal.
 
 II
 
 8
 Liberty Group and Gurley make two primary arguments to this court in No. 90-2266. They argue that the district court gave an erroneous instruction to the jury which allowed the jury to find a violation of Rule 10b-5 based on a negligent failure to disclose when the proper standard, Liberty Group and Gurley maintain, is a reckless failure to disclose. They seek a new trial on this count. Secondly, they seek a JNOV or a new trial on the RICO charge because they claim that there was no evidence introduced that showed an enterprise separate from the defendant Liberty Group, and with its own purpose, structure, and decision-making capability as required by 18 U.S.C. § 1962(c).
 
 
 9
 Rule 10b-5 promulgated under the Securities Exchange Act of 1934 makes it unlawful
 
 
 10
 (a) To employ any device, scheme, or artifice to defraud,
 
 
 11
 (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or
 
 
 12
 (c) to engage in any act, practice, or course of business which would operate as a fraud or deceit upon any person,
 
 
 13
 in connection with the purchase or sale of any security.
 
 
 14
 17 C.F.R. § 240.10b-5(b).
 
 
 15
 The basis of the County's claim against the defendants is that Liberty Group churned the County's account by making frequent trades and charging markups on the transactions which were both excessive and undisclosed. The parties have agreed that the markups were undisclosed. Appellant's Brief at 10. The central issue at trial was thus whether the markups were so excessive that the failure to disclose them constituted fraud of the sort prohibited by Rule 10b-5. The parties accordingly marshalled experts who gave contradictory testimony as to the reasonableness of the markups. Tr., Appellant's Appendix at 377 and 384-87.
 
 
 16
 After the close of the evidence the court instructed the jury as to the law. Instruction 24, which is challenged here, described the requisite mental state for liability on a 10b-5 claim.
 
 
 17
 The plaintiff, in order to recover on his 10B-5 claim, must show that the defendant acted knowingly, that is, with a mental state embracing intent to deceive, manipulate, or defraud. In order to establish this element the plaintiff must prove by the greater weight of the evidence that the defendant made material statements which he knew to be false, or made statements with reckless disregard for their truth or falsity, or knew of the existence of material facts which were not disclosed and he should have realized their significance in the making of an investment decision, or knew of the existence of material facts which were not disclosed although he knew that knowledge of those facts would be necessary to make his other statements not misleading.
 
 
 18
 Joint Appendix at 274 (emphasis added).
 
 
 19
 The defendants objected that this instruction was an incorrect statement of the law. They asserted that "[t]he scienter element requires an intent to deceive, manipulate, or defraud. I think that under the [Hochfelder ] case that you would have to show more than this, which would be more of a simplest [sic] negligence standard instead of a gross negligence standard." Tr., Joint App. at 77-78. The objection was overruled.
 
 
 20
 On appeal the appellants elaborate on their initial objection by arguing that Ernst & Ernst v. Hochfelder, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 reh'g denied, 425 U.S. 986, 96 S.Ct. 2194, 48 L.Ed.2d 811 (1976), established that 10b-5 liability requires much more than mere negligence. This reading is correct. Id. at 193, 96 S.Ct. at 1380. Although Hochfelder established the principle that scienter is required to generate 10b-5 liability, it expressly declined to decide whether recklessness is sufficient to constitute scienter. Id. at 194 n. 12, 96 S.Ct. at 1381 n. 12. This Circuit has since answered the question in the affirmative. Hackbart v. Holmes, 675 F.2d 1114, 1117 (10th Cir.1982) ("At this time we expressly hold that recklessness satisfies the scienter requirement."). The County cites contrary authority for the proposition that Rule 10b-5 is violated whenever facts material to an investment decision are intentionally withheld. Tager v. S.E.C., 344 F.2d 5, 8 (2d Cir.1965); Charles Hughes & Co. v. S.E.C., 139 F.2d 434, 435 (2d Cir.1943), cert. denied, 321 U.S. 786, 64 S.Ct. 781, 88 L.Ed. 1077 (1944). The County's precedents are largely inapposite, however, and all predate the Supreme Court's ruling in Hochfelder and our holding in Hackbart. Reviewing the instructions as a whole, we hold that the trial court's instruction that allowed a finding of fault based on the simple negligence standard of "should have realized" was therefore error as a matter of law.[2]
 
 
 21
 The County argues, however, that even if the instructions were in error, Liberty Group did not make a proper objection to the instruction as required by Fed.R.Civ.P. Rule 51. The County points out, correctly, that the defendants at trial asserted that the proper standard was one of gross negligence and not the recklessness standard which they now propose. The County, echoing the district court's reasoning denying the defendants' new trial motion, argues that the defendants may not now raise this objection absent plain error. We disagree because we find that a proper and timely objection was made.
 
 
 22
 Liberty Group identified the specific instruction to which they objected. They stated the general grounds for the objection--that 10b-5's scienter requirement demands a showing of a higher quantum of culpability than that entailed in simple negligence. Furthermore, they cited the specific Supreme Court case which established this proposition. The only possible mistake made by Liberty Group was that they requested an instruction on gross negligence and not the presumably somewhat more stringent recklessness standard. Yet the line between gross negligence and recklessness is a fine one at best. "[T]here is often no clear distinction at all between [recklessness] and 'gross' negligence, and the two have tended to merge and take on the same meaning." W. Page Keeton et al., Prosser and Keeton on the Law of Torts, p. 214 (1984). See Britt v. Allen County Community Junior College, 230 Kan. 502, 638 P.2d 914, 920 (1982) (equating gross negligence with reckless disregard for consequences); Fassett v. Santiam Loggers, Inc., 267 Or. 505, 517 P.2d 1059, 1060 (1973) ("Gross negligence is the equivalent of reckless disregard."); St. Onge v. Detroit and Mackinac Railway Co., 116 Mich.App. 128, 321 N.W.2d 865, 867 (1982) (holding that gross negligence "has essentially the same meaning as the term 'recklessness' ").
 
 
 23
 "[I]f the objection properly calls the alleged error to the court's attention and relates to the court that an exception is taken to the instruction, the requirement of [Rule 51] is met." Taylor v. Denver and Rio Grande Western Railroad Co., 438 F.2d 351, 353 (10th Cir.1971). Without in any way implying that gross negligence and reckless conduct are legally synonymous, we hold that under the circumstances the defendants' reference to gross negligence was sufficient to alert the district court to the issue of the degree of culpability necessary to constitute scienter. The defendants' objection that Hochfelder requires a finding of gross negligence rather than simple negligence was sufficient to fully inform the court of the specific nature of and grounds for the objection. The objection was thus sufficiently preserved on appeal.
 
 
 24
 Given that the defendants timely objected to the state of mind instruction and that the challenged instruction was erroneous, there remains only the question of whether or not the error was prejudicial. When a timely, well-taken objection is made to jury instructions, the beneficiary of the error, in this case the County, has the burden of showing that the error "almost surely did not affect the outcome of the case." Lusby v. T.G. & Y. Stores, Inc., 796 F.2d 1307, 1312 n. 4 (10th Cir.1986), cert. denied, 479 U.S. 884, 107 S.Ct. 275, 93 L.Ed.2d 251 (1986).[3] The focus of the trial was on the failure to disclose. Answer Brief at 15. The County made no real attempt to show affirmative misrepresentations. The defendants' liability thus turned almost entirely on just how culpable their failure to disclose was. Based on our review of the briefs and of the record as a whole it is clear that the appellees have not met their burden of showing that the trial court's instruction allowing a finding of liability based on simple negligence rather than recklessness was harmless. The judgment of the trial court as to 10b-5 liability must accordingly be reversed and a new trial ordered.
 
 III
 
 25
 The second claim of error of Liberty Group is that there was a failure of proof of an element necessary to establish a violation of RICO. We review de novo the district court's denial of the motion for judgment notwithstanding the verdict. Johnsen v. Independent School District No. 3, 891 F.2d 1485, 1489 (10th Cir.1989). We therefore apply the same standard as applied by the trial court. The denial of a motion for a JNOV will be overturned only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion. Ralston Development Corp. v. United States, 937 F.2d 510, 512 (10th Cir.1991).
 
 
 26
 18 U.S.C. § 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."
 
 
 27
 As the jury instructions and the predominant view in the cases make clear, under § 1962(c) it is required that the "person" and the "enterprise" engaged in racketeering activities be different entities. See Garbade v. Great Divide Mining and Milling Corp., 831 F.2d 212, 213 (10th Cir.1987).[4] The district court took the position that the verdict against Liberty Group was supported by the evidence that Liberty Group itself was the enterprise. Memorandum Opinion and Order at 7-8. We are persuaded that this was error under the cases cited. The language of the statute clearly contemplates that the "person" charged will be distinct from the "enterprise", since a person cannot logically be "employed by or associated with" himself. If Liberty Group is found to have violated RICO, liability under § 1962(c) must be based on Liberty Group's association with some entity separate from itself. The County thus had the burden of proving that these defendants were part of an enterprise which had an existence and purpose distinct from any one of them to establish § 1962(c) liability.
 
 
 28
 The County identifies the RICO enterprise as an association in fact among Liberty Group, Liberty Partners, F.M.G. Partners, Liberty Capital Markets, Norman Gurley, and Doyle Holmes. This was how the case was submitted to the jury. Instruction No. 12, Joint App. at 260. The defendants counter that the alleged association in fact was nothing more than Liberty Group itself. In their view the evidence which purportedly showed an association in fact showed nothing more than the various officers and employees of Liberty Group carrying on the firm's business. Under Old Time Enterprises v. International Coffee Corp., 862 F.2d 1213 (5th Cir.1989), a separate enterprise is not demonstrated by the mere showing that the corporation committed a pattern of predicate acts in the conduct of its own business. Id. at 1217. Thus, the defendants maintain, there was a total failure of proof of an enterprise separate from the defendant, Liberty Group. After a close examination of the record we must agree.
 
 
 29
 In its answer brief the County gives a careful description of how the alleged association in fact carried out its business, relying heavily on the testimony of Doyle Holmes. Answer Brief at 21-23. It was Holmes' testimony at trial which laid out the operating procedures of the enterprise's securities business. Despite the County's claims, at no point did Holmes describe activity by any enterprise other than Liberty Group itself. The "association's" business in New Mexico began with the receipt of a license to act as a broker-dealer in the state. Second Amended Complaint, Appellee's App. at 4. Liberty Group's statement that it would not maintain an office in the state was signed by James Graham in his capacity as secretary of defendant Liberty Partners, a general partner of Liberty Group. Tr., Appellee's App. at 201. The account executives who were licensed to operate in New Mexico were Jim Culhane and the defendant Norman Gurley, employees of Liberty Group. Id. at 202. It was Norman Gurley who handled the San Juan account.
 
 
 30
 A bond transaction would begin after a conversation between an account executive and his client ended in the determination that a particular security should be bought or sold. The account executive would then notify the trading desk, usually the defendant Chester Walker, a general partner of Liberty Group. Id. at 204. Second Amended Complaint at 3. Calls were then made to clearinghouse brokers such as Prudential-Bache seeking quotes. If the price quoted was acceptable the transaction would be made. Tr., Appellee's App. at 204-205. Prudential-Bache would record these transactions in Liberty Group's house account, and send a monthly statement to the client. Tr. at 78-79. Plaintiff's Exh. 31-A. The decision on how much of a mark-up to charge clients was made by George Gabel, compliance officer and sales manager of Liberty Group. Tr., Appellee's App. at 82-83.
 
 
 31
 Every individual involved in setting up the business in New Mexico, trading securities, and determining markups was thus an employee or officer of Liberty Group itself. The license to do business and the trading accounts with Prudential-Bache were both in Liberty Group's name. Although there was some testimony that "Liberty" took one action or another, this was always in a context which made it clear that the entity referred to was Liberty Group and not some amorphous association in fact.
 
 
 32
 In short, the appellees point to no evidence that the alleged association and its activities were anything more than Liberty Group going about its ordinary business of dealing in securities by and through its officers and employees. A legal entity, such as Liberty Group Ltd., can perform an action or make a decision only through human intermediaries, such as the individual defendants here. Courts have accordingly found that the officers and employees of an organization cannot, in the ordinary course of their duties, constitute an association in fact separate from the organization itself. Yellow Bus Lines Inc. v. Local Union 639, 883 F.2d 132, 141 (D.C.Cir.1989), cert. denied, --- U.S. ----, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991); Moffatt Enterprises, Inc. v. Borden, Inc., 763 F.Supp. 143, 149 (W.D.Pa.1990). Thus there was a complete failure of proof at trial of an association in fact separate from Liberty Group. The required separation between the RICO enterprise and the defendant Liberty Group was not established and JNOV should have been granted to Liberty Group as to any liability under § 1962(c).
 
 
 33
 With respect to the defendant Gurley, he may be a "person" under § 1962(c). Thus the defect in proving the existence of a "person" separate from the "enterprise" is not present with respect to Gurley, and a new trial for such defect is not required. Nevertheless, the verdict against him must be set aside for the error discussed earlier with respect to the instruction on the underlying securities fraud claim which premised the RICO judgment against Gurley.
 
 IV
 
 34
 In sum, the district court erred in instructing the jury concerning 10b-5 liability. Therefore, new trials must be granted with respect to the federal securities claims of the plaintiffs against both Liberty Group and Norman Gurley.
 
 
 35
 With respect to the RICO claim against defendants Liberty Group and Liberty Capital, the judgment and amended judgment are being set aside for insufficiency of the evidence as explained above. In the event of such a reversal of the judgment, the appellate court may determine that the appellee is entitled to a new trial, or it may direct that the trial court determine whether a new trial should be granted. Fed.R.Civ.P. 50(d); Neely v. Eby Construction Co., 386 U.S. 317, 329, 87 S.Ct. 1072, 1080, 18 L.Ed.2d 75 (1967); Firestone Tire and Rubber Co. v. Pearson, 769 F.2d 1471, 1480 (10th Cir.1985). We conclude that we should leave the determination of whether a new trial should be had on the RICO claim against the defendants to the district court.
 
 
 36
 Accordingly, in No. 90-2266, the judgment and amended judgment entered in No. 88-414-M of the district court, including the award of attorney's fees and costs, are REVERSED and the case is REMANDED for a new trial for the defendants on the securities claim. In No. 90-2266, San Juan County's request for attorney's fees on appeal is DENIED. With respect to the RICO claim of San Juan County against the defendants, the cause is REMANDED to the district court to determine whether a new trial on the RICO claim should be granted.
 
 
 37
 Our reversals of the judgment and the amended judgment in No. 88-414-M of the district court make it unnecessary for us to consider the merits of the claims of error in No. 90-2275 respecting the inclusion in the amended judgment of the pretrial stipulations as to successor liability of Liberty Capital. Both Liberty Capital's request that the amended judgment be partially vacated and San Juan County's request for sanctions and attorney's fees are therefore DENIED.
 
 
 38
 Furthermore, in connection with No. 91-2166, in light of the reversals of the judgment and amended judgment entered in No. 88-414-M of the district court, it is unnecessary for us to consider the claims of error in the order quashing the writ. The findings concerning the garnishment writ are VACATED as moot. In No. 91-2166, the request of San Juan County for attorney's fees and costs is DENIED.
 
 
 39
 IT IS SO ORDERED.
 
 
 
 *
 The Honorable Robin J. Cauthron, United States District Judge for the Western District of Oklahoma, sitting by designation
 
 
 [1]
 Prudential-Bache Securities was originally named as a defendant but the claim against it was dropped shortly before trial. Also named were Chester Walker, a general partner of Liberty Group; Robert Holmes, President of Liberty Partners; Steve Holmes, President of Liberty Capital; and James Graham, Secretary of Liberty Partners. The County's claims against Graham were dismissed without prejudice before trial. At the close of evidence, a directed verdict was entered in favor of Robert and Steve Holmes and Chester Walker
 
 
 [2]
 On remand the district court should take care to incorporate into its instructions the essence of the definition of scienter outlined in the relevant cases. Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." Hochfelder, 425 U.S. at 193, 96 S.Ct. at 1381. This intent requirement can be satisfied by a showing of recklessness. Reckless behavior is conduct that is "an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or so obvious that the actor must have been aware of it." Hackbart, 675 F.2d at 1118
 
 
 [3]
 The appellees would have us apply the standard used in Clegg v. Conk, 507 F.2d 1351 (10th Cir.1974), cert. denied, 422 U.S. 1007, 95 S.Ct. 2628, 45 L.Ed.2d 669 (1975). In Clegg this Court refused, in circumstances generally similar to those now before us, to order a new trial absent a showing of fundamental error. Id. at 1363. However, in Clegg, there had been no proper objection to the challenged instruction at trial. Here there was such an objection
 
 
 [4]
 Eleven circuits have addressed this issue, and all but one have found that the RICO "enterprise" and the "person" must be distinct. See Yellow Bus Lines v. Local Union 639, 839 F.2d 782, 789-90 (D.C.Cir.1988), rev'd on other grounds, 913 F.2d 948 (D.C.Cir.1990) (en banc); Schreiber Distributing Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1396 (9th Cir.1986); Bishop v. Corbitt Marine Ways, Inc., 802 F.2d 122, 123 (5th Cir.1986); Schofield v. First Commodity Corp. of Boston, 793 F.2d 28, 30 (1st Cir.1986); Haroco v. American National Bank & Trust Co. of Chicago, 747 F.2d 384, 401 (7th Cir.1984), aff'd on other grounds, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985); Bennett v. United States Trust Co., 770 F.2d 308, 315 (2d Cir.1985), cert. denied, 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986); B.F. Hirsch v. Enright Refining Co., 751 F.2d 628, 633 (3d Cir.1984); Alexander Grant & Co. v. Tiffany Industries, 742 F.2d 408, 411 n. 6 (8th Cir.1984), judgment vacated on other grounds, 469 U.S. 1205, 105 S.Ct. 1164, 84 L.Ed.2d 316 (1984); United States v. Computer Sciences Corp., 689 F.2d 1181, 1190 (4th Cir.1982), cert. denied, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). Cf. United States v. Hartley, 678 F.2d 961 (11th Cir.1982), cert. denied, 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983). For a discussion of the evolution of this doctrine see David Smith and Terrance Reed, Civil RICO, p 3.07 (1992)